IN THE
# United States Court of Appeals for the Eighth Circuit

IOWA SAFE SCHOOLS, formerly known as GLBT Youth in Iowa Schools Task Force; *et al.*,

*Plaintiffs-Appellees*,

v.

KIMBERLY REYNOLDS, in her official capacity as Governor of the State of Iowa; *et al.*,

*Defendants-Appellants*,

MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; *et al.*,

*Defendants.*

On Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:23-cv-474
(The Honorable Stephen H. Locher)

## BRIEF OF DEFENDANTS-APPELLANTS

BRENNA BIRD
Attorney General of Iowa

STEVEN BLANKINSHIP
*Deputy Attorney General*

ERIC WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

August 5, 2025

*Counsel for Defendants-Appellants*

## SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT

Iowa law requires that (1) schools notify parents if the school wants to transition the child's gender identity and (2) elementary schoolers not be taught about sexuality or gender theory. At least it would if enforcement was not enjoined—despite earlier vacatur of a similar injunction.

Here, some students, school employees, and an association challenged that law. This Court should again vacate the district court's injunction and should, again, clarify the law to avoid the State facing a third preliminary injunction in this almost two-year old case.

Under Iowa law, parents have a right to know if a school wants to aid in transitioning their children. The facial injunction entered against that law upends not only Iowa law but also is itself an infringement on parental rights. Perhaps recognizing the extreme position, the district judge crafted its own facial injunction rather than grant the sought relief.

And Iowa's law—regulating its own speech—was enjoined through the misapplication of *NetChoice's* facial overbreadth analysis.

This case warrants oral argument. Fifteen minutes is adequate argument time for State Defendants.

# TABLE OF CONTENTS

**Page**

SUMMARY OF CASE AND STATEMENT ON ORAL
ARGUMENT ........................................................................... i

TABLE OF CONTENTS ............................................................ ii

TABLE OF AUTHORITIES ..................................................... iv

STATEMENT OF JURISDICTION ......................................... 1

STATEMENT OF THE ISSUES ............................................... 2

INTRODUCTION ...................................................................... 4

STATEMENT OF THE CASE ................................................ 10

      I.      Senate File 496 ............................................. 10

      II.     Plaintiffs Sue to Enjoin SF496. ................... 13

      III.    District Court Preliminarily Facially
            Enjoins Two-Sevenths of the Instruction
            Section and the "Accommodations" Part of
            the Parental Notice Section. ........................ 15

SUMMARY OF THE ARGUMENT ....................................... 17

ARGUMENT ........................................................................... 20

    I.     STANDARD OF REVIEW .................................. 21

    II.    REQUIRING SCHOOLS TO NOTIFY PARENTS
          ABOUT "ACCOMMODATIONS" ATTEMPTING
          TO FACILITATE THEIR CHILDREN'S
          TRANSITION IS CONSTITUTIONAL. ............. 22

          A.    The Parental Notice Section Is Not Vague. ............... 22

          B.    The Parental Notice Section Is Not Even
               Ambiguous. ................................................... 25

III.   THE DISTRICT COURT'S CONCLUSION THAT
       TWO WORDS IN THE STATUTE MUST BE
       FACIALLY ENJOINED UNDER THE FIRST
       AMENDMENT IMPROPERLY APPLIES
       *NETCHOICE*.................................................................. 31

       A.   The Instruction Section Applies to
            Mandatory Curricular Instruction and Thus
            Survives Scrutiny............................................. 33

       B.   The *NetChoice* Factors Establish A High
            Burden For Relief.............................................. 38

       C.   Applying *NetChoice*, Plaintiffs Claims Fail................ 41

IV.    REMAINING PRELIMINARY-INJUNCTION
       FACTORS CAUTION AGAINST ENJOINING
       SF496................................................................... 47

       A.   Plaintiffs Can Show No Irreparable Harm. ............... 47

       B.   The Balance of Equities and the Public
            Interest Do Not Favor an Injunction. ....................... 48

V.     THE DISTRICT COURT SHOULD HAVE
       DENIED THE CHALLENGE TO THE LIBRARY
       SECTION AS MOOT. ........................................... 50

CONCLUSION ...................................................................... 53

CERTIFICATE OF COMPLIANCE....................................... 54

CERTIFICATE OF SERVICE................................................ 55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adam & Eve Jonesboro, LLC v. Perrin,*
933 F.3d 951 (8th Cir. 2019) ........................................ 2, 24

*Americans for Prosperity Found v. Bonta,*
594 U.S. 595 (2021) ........................................................ 39

*Bennie v. Munn,*
822 F.3d 392 (8th Cir. 2016) ........................................... 6

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ........................................................ 39

*Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.,*
880 N.W.2d 212 (Iowa 2016) ................................ 2, 24, 37

*Dixon v. City of St. Louis,*
950 F.3d 1052 (8th Cir. 2020) ......................................... 21

*Doe v. Department of Veterans Affairs of U.S.,*
519 F.3d 456 (8th Cir. 2008) ........................................... 25

*Dubin v. United States,*
599 U.S. 110 (2023) ........................................................ 37

*Erznoznik v. City of Jacksonville,*
422 U.S. 205 (1975) ........................................................ 23

*Farkas v. Miller,*
151 F.3d 900 (8th Cir. 1998) ........................................... 23

*FCC v. Fox Television Stations, Inc.,*
567 U.S. 239 (2012) ........................................................ 23

*Gerlich v. Leath,*
152 F. Supp. 3d 1152 (S.D. Iowa 2016) ........................... 23

*GLBT Youth in Iowa Sch. Task Force v. Reynolds,*
709 F. Supp. 3d 664 (S.D. Iowa 2023) .............................. 8

*GLBT Youth v. Reynolds,*
114 F.4th 660 (8th Cir. 2024) ............... 12, 34, 36, 38, 39, 50

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ........................................................ 25

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ........................................................... 23

*Iowa Migrant Movement for Just. v. Bird,*
2025 WL 319926 (8th Cir. 2025) .......................... 3, 51, 52

*Iowa Safe Sch. v. Reynolds*,
    2025 WL 1834140 (S.D. Iowa May 15, 2025) ...................................... 8

*Jet Midwest Int'l Co., v. Jet Midwest Grp, LLC*,
    953 F.3d 1041 (8th Cir. 2020) ....................................................... 3, 20

*Johnson v. Minneapolis Park & Recreation Bd.*,
    729 F.3d 1094 (8th Cir. 2013) ............................................................ 21

*Lacks v. Ferguson Reorganized Sch. Dist. R-2*,
    147 F.3d 718 (8th Cir. 1998) ............................................................... 3

*Moody v. NetChoice*,
    603 U.S. 707 (2024) ....................... 2, 7, 8, 9, 31, 32, 38, 39, 40, 43, 45

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*,
    508 U.S. 286 (1993) .................................................................... 2, 25

*Org. for Black Struggle v. Ashcroft*,
    978 F.3d 603 (8th Cir. 2020) .............................................................. 47

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
    83 F.4th 658 (8th Cir. 2023) ....................................... 2, 23, 24, 25, 27

*Penguin Random House LLC v. Robbins*,
    774 F. Supp. 3d 1001 (S.D. Iowa 2025) ............................. 8, 12, 15, 51

*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*,
    530 F.3d 724 (8th Cir. 2008) .............................................. 1, 21, 47, 48

*Pleasant Grove City, Utah v. Summum*,
    555 U.S. 460 (2009) ........................................................................... 3

*Powell v. Noble*,
    798 F.3d 690 (8th Cir. 2015) .............................................................. 47

*Ruesga v. Boettger*,
    2022 WL 2187801 (S.D. Iowa May 11, 2022) ...................................... 6

*Sleep No. Corp. v. Young*,
    33 F.4th 1012 (8th Cir. 2022) ............................................................ 21

*Texas Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) .............................................................. 48

*Tr. of the Twin City Bricklayers Fringe Benefit Funds v. Superior
    Waterproofing, Inc.*,
    450 F.3d 324 (8th Cir. 2006) .............................................................. 26

*Trump v. CASA, Inc.*,
    142 S. Ct.  (2025) ..................................................................... 2, 8, 9

*Trump v. CASA, Inc.*,
   145 S. Ct. 2540 (2025) ................................................. 17, 31, 49, 50, 51
*United States v. Am. Libr. Ass'n, Inc.*,
   539 U.S. 194 (2003) .............................................................................3
*United States v. Hansen*,
   599 U.S. 762 (2023) ...........................................................................38
*United States v. Hansl*,
   439 F.3d 850 (8th Cir. 2006) .............................................................26
*United States v. Iowa*,
   737 F. Supp. 3d 725 (S.D. Iowa 2024) ...............................................8
*United States v. Kidd*,
   23 F.4th 781 (8th Cir. 2022) ..............................................................37
*United States v. McAllister*,
   225 F.3d 982 (8th Cir.2000) ..............................................................25
*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020) .......................................................................7, 33
*United States v. White Plume*,
   447 F.3d 1067 (8th Cir. 2006) ...........................................................26
*Walls v. Sanders*,
   2025 WL 1948450 (8th Cir. July 16, 2025) ...................... 34, 35, 36, 38
*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) .............................................................................7
*Watkins, Inc. v. Lewis*,
   346 F.3d 841 (8th Cir. 2020) ......................................................3, 20, 48
*Wiser v. Wayne Farms*,
   411 F.3d 923 (8th Cir. 2005) .............................................................47
*Young v. Am. Mini Theatres, Inc.*,
   427 U.S. 50 (1976) ....................................................................2, 23, 25

**Statutes**

20 U.S.C. § 4071 ......................................................................................13
20 U.S.C. §1400 ......................................................................................27
28 U.S.C. § 1292(a)(1)................................................................................1
28 U.S.C. § 1331 ........................................................................................1
29 U.SC. § 794(a)....................................................................................27

# TABLE OF AUTHORITIES—Continued

**Page(s)**

42 U.S.C. § 12132 ...................................................................27

Ark. Code § 6-16-156 ................................................. 34, 35, 36

Iowa Code § 216.2 .................................................................12

Iowa Code § 256.11 ........................................................ 3, 12, 38

Iowa Code § 278.3 ............................................................. 2, 24

Iowa Code § 279.78 .................................................. 4, 10, 11, 29

Iowa Code § 279.80 ..................... 2, 5, 11, 12, 36, 37, 41, 42

Iowa Code § 4.4 ......................................................... 2, 24, 34

## STATEMENT OF JURISDICTION

The district court, which had jurisdiction under 28 U.S.C. § 1331, issued its opinion and order granting in part Plaintiffs' motion for preliminary injunction on May 15, 2025. App.Vol.2.561, R.Doc.141. at 35. State Defendants timely appealed on June 13, 2025. R.Doc.145. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review an interlocutory order granting a preliminary injunction. *See Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008).

# STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in finding Plaintiffs likely to succeed in their void-for-vagueness challenge, which alleges that licensed practitioners do not have fair notice in the Parental Notification Section of what an "accommodation" intended to affirm a student's gender identity means other than as to pronouns.

**Cases**:    *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658 (8th Cir. 2023)

*Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951 (8th Cir. 2019)

*Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286 (1993)

**Statute**: Iowa Code § 278.3

2. Whether the district court abused its discretion in deciding Plaintiffs were likely to succeed on their vagueness challenge of the Instruction Section, where ordinary tools of statutory interpretation reveal a plausible, narrowing construction.

**Cases**:    *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976)

*Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212 (Iowa 2016)

*Moody v. NetChoice*, 603 U.S. 707 (2024)

*Trump v. CASA, Inc.*, 142 S. Ct. 2540 (2025)

**Statutes**: Iowa Code § 4.4; Iowa Code § 279.80

3. Whether the district court abused its discretion in finding Plaintiffs likely to succeed in their First Amendment challenge of the Library Section without analysis and despite having already entered a facial injunction against its enforcement.

**Cases**:    *Iowa Migrant Movement for Just. v. Bird*, 2025 WL 319926 (8th Cir. 2025)

*Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009)

*United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194 (2003)

*Lacks v. Ferguson Reorganized Sch. Dist. R-2*, 147 F.3d 718 (8th Cir. 1998)

**Statute**: Iowa Code § 256.11

4. Whether the district court abused its discretion in issuing a preliminary injunction when the equitable factors weigh against a preliminary injunction and the only irreparable harm is to the State.

**Cases**:    *Watkins, Inc. v. Lewis*, 346 F.3d 841 (8th Cir. 2020)

*Jet Midwest Int'l Co., v. Jet Midwest Grp, LLC,* 953 F.3d 1041 (8th Cir. 2020)

# INTRODUCTION

Plaintiffs facially challenge an Iowa education reform that advances the State's pedagogical interests and protects both students and parental rights. That law, Senate File 496, ensures that schools must notify parents when a student requests an "accommodation that is intended to affirm the student's gender identity . . . including a request that the licensed practitioner address the student using a name or pronoun that is different from the name or pronoun assigned to the student in the school district's registration forms or records." App.Vol.2.558, R.Doc.141 at 32 (quoting Iowa Code § 279.78(3)). In short, the law requires that schools notify parents before transitioning their children. Such a requirement is common-sense.

But the district court facially enjoined the section as to any accommodation other than pronoun use after finding the word "accommodation" to be impermissibly vague—even with the aid of a dictionary. *Id.* (quoting *Accommodation*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020)). Because average people—including both the adult Plaintiffs with standing and judges—are equipped to understand

the word accommodation in this context, this Court should vacate the injunction as to the Parental Notice Section.

SF496 also ensures that students receive an age-appropriate education and protects them from being exposed to inappropriate material in school. It does so by prohibiting schools from providing "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation" to students in kindergarten through sixth grade. App.Vol.2.392, R.Doc.128 at 3 (quoting Iowa Code § 279.80(2) ("Instruction Section")). [1] Following vacatur of an earlier entered facial injunction against enforcing the whole section, the district court entered a facial injunction against enforcing two of the seven words on that list—"program" and "promotion." App.Vol.2.561, R.Doc.141 at 35.

The district court preliminarily and universally facially enjoined the State's enforcement of the law as to those two words. Ultimately, the

---

[1] This year's Senate File 418 amends Iowa Code section 279.80(2) to replace "[g]ender identity" with "[g]ender theory." That law was signed on February 28, 2025, and went into effect on July 1. State Defendants do not interpret that change to be relevant to the district court's injunction relating to enjoining enforcement of the Instruction Section's words "program" or "promotion." *See infra* Argument Section III.

district court errs in seeking to impose an impermissible "obey the law" injunction. *See*, *e.g.*, *Ruesga v. Boettger*, 2022 WL 2187801, at *3 (S.D. Iowa May 11, 2022) (quoting *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016)). The injunctions entered against both parts of the law are entered in error.

*First*, the word "accommodation" is not ambiguous let alone so impermissibly vague as to justify facial injunctive relief. As-applied challenges remain available if there is ever an actual dispute over whether a gender-identity-related accommodation is granted without notifying parents. Ultimately, the State must be free to ensure that the public schools it creates properly respect parental rights and do not accommodate, encourage, or facilitate lifechanging decisions for children without notifying parents.

*Second*, the district court erred in rejecting the State's interpretation of its statute that the whole law applies only to a school's compulsory instructional program. And to the extent the district court did not err in its expansive view of the law's scope, a facial injunction was an abuse of discretion because far more of its applications are constitutional than unconstitutional. Under the district court's own

analysis, five of the seven listed terms are constitutional—yet the Court entered a facial injunction against the two.

That flouts *Moody v. NetChoice*, 603 U.S. 707 (2024). If the district court calculates that a statute's applications are overwhelmingly constitutional, then a facial injunction is improper. Changing the scope of relief to artificially create a denominator problem—despite the Plaintiffs seeking no such narrowed relief—flouts both *NetChoice* and *United States v. Sineneng-Smith*, 590 U.S. 371 (2020).

*Third*, the district court erred in interpreting SF496's Instruction Section word-by-word in isolation, neglecting the context of the whole statute. That is contrary to Iowa and federal precedents on statutory interpretation. And it conflicts with the Supreme Court's instructions to apply a plausible, narrowing construction when possible before resolving a statute is void for vagueness.

*Finally*, pre-enforcement injunctions that universally enjoin the State's enforcement "'threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways." *NetChoice*, 603 U.S. at 723 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450–51 (2008)); *see*

*Trump v. CASA, Inc.*, 142 S. Ct. 2540, 2548 (2025). The district court here has been faced with six opportunities to enter facial pre-enforcement injunctions against duly enacted Iowa laws and has done so six times—universally—including this case on remand after an earlier vacatur of a facial injunction. *See*, *e.g.*, *GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 709 F. Supp. 3d 664 (S.D. Iowa 2023) (two consolidated cases challenging three sections of SF496)*, rev'd and vacated*, 114 F.4th 660 (8th Cir. 2024).[2] In effect, the State of Iowa faces a federal judicial veto over its laws—despite the availability for as-applied challenges *if* any of the laws are unlawfully applied.

For "a host of good reasons, courts usually handle constitutional claims case by case, not en masse." *NetChoice*, 603 U.S. at 723. The

---

[2] *See also United States v. Iowa*, 737 F. Supp. 3d 725, 732 (S.D. Iowa 2024) (two consolidated cases challenging entirety of Iowa illegal reentry crime)*, vacated and remanded sub nom. Iowa Migrant Movement for Just. v. Bird*, 2025 WL 319926 (8th Cir. Jan. 24, 2025)*, reh'g granted and opinion vacated*, 2025 WL 1140762 (8th Cir. Apr. 15, 2025)*, and aff'd,* 126 F.4th 1334 (8th Cir. 2025)*, reh'g granted and opinion vacated*, 2025 WL 1113191 (8th Cir. Apr. 15, 2025)*, and vacated*, 2025 WL 1140834 (8th Cir. Apr. 15, 2025)*, and opinion vacated, appeal dismissed*, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001 (S.D. Iowa 2025); *Iowa Safe Sch. v. Reynolds*, 2025 WL 1834140 (S.D. Iowa May 15, 2025).

Supreme Court has "made facial challenges hard to win." *Id.*; *see CASA*, 142 S. Ct. at 2548 (Universal injunctions "likely exceed the equitable authority that Congress has granted to federal courts."). The State respectfully requests that this Court establish clear standards under *GLBT Youth*, *NetChoice*, and *CASA* to aid district courts in properly weighing whether a pre-enforcement facial injunction is proper.

Indeed, if every time a plaintiff seeks a facial injunction the district court can decide to enjoin some subset of the law—in full and against even nonparties—then that impermissibly shifts the burden contrary to this Court's precedent in *NetChoice*. The new presumption becomes: if enforcement of any part of the law may be enjoined it is better to seek facial relief—because the Court can craft its own remedy independent of any relief asked for by the movant.

In sum, the district court should not have enjoined the State's enforcement of SF496. This Court should provide lower courts with guidance on these important issues. And it should vacate the preliminary injunction.

**STATEMENT OF THE CASE**

## I.  Senate File 496

SF496 sets curricular standards and imposes certain related duties on school districts and their employees. Included in those duties are a duty to alert parents if their children seek to socially or medically transition at school and a prohibition on instruction related to gender identity or sexuality outside of health class for elementary schoolers. Governor Reynolds signed SF496 into law on May 26, 2023. *See* Bill History for SF496, perma.cc/WU74-P3A9 (accessed Aug. 5, 2025).

### A.  Parental Notice Section

The Parental Notice Section imposes common-sense rules on schools. SF496, § 14 (Iowa Code § 279.78). For example, a "school district shall not knowingly give false or misleading information to the parent or guardian of a student regarding the student's gender identity or intention to transition to a gender that is different than the sex listed on a student's official birth certificate." Iowa Code § 279.78(2).

Another common-sense rule is that if "a student enrolled in a school district requests an accommodation that is intended to affirm the student's gender identity from a licensed practitioner employed by the

school district" then "the licensed practitioner shall report the student's request to an administrator employed by the school district" who in turn will alert the student's parent or guardian. Iowa Code § 279.78(3).

The district court declined to facially enjoin enforcement of this part of the law in the first pre-enforcement facial injunction sought by Plaintiffs, finding Plaintiffs lacked standing. After the district court's earlier injunction was vacated, it entered a new injunction on remand. The district court found that the admonition that licensed teachers, therapists, guidance counselors and the like must tell parents if a student requests "an accommodation that is intended to affirm the student's gender identity" was impermissibly vague, so the court facially enjoined its enforcement as to any accommodation other than pronouns. App.Vol.2.558–559, R.Doc.141 at 32–33; App.Vol.2.561, R.Doc.141 at 35.

### B.    Instruction Section

SF496 created a new section titled "Sexual orientation and gender identity—prohibited instruction." SF496 § 16 (Iowa Code § 279.80 (2024)); *see also* SF418 § 28 (amending Iowa Code § 279.80 to replace "identity" with "theory"). This "Instruction Section" prohibits school districts from "provid[ing] any program, curriculum, test, survey, questionnaire,

11

promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six." *Id.* The Section incorporates the prior-existing, neutral definitions of "gender identity" and "sexual orientation" found in Iowa Code § 216.2.

Beginning in summer 2023, non-compliant school districts and employees could be disciplined. Iowa Code § 256.11(9). In the initial pre-enforcement challenge to Iowa's law, the district court entered a facial injunction against its enforcement. *See* R.Doc.65 at 45–46. This Court vacated that injunction. *GLBT Youth v. Reynolds*, 114 F.4th 660, 671 (8th Cir. 2024). The district court reentered its injunction as to the words "program" and "promotion" on remand. App.Vol.2.561, R.Doc.141 at 35.

The Instruction Section does not provide for any enforcement against students.

## C.    Library Section

SF496 also added regulations restricting the use of books in Iowa's public-school libraries that contain "descriptions" or "visual depictions" of a "sex act." Adopting its reasoning in the nonconsolidated related case with its own separate appeal, *see Penguin Random House, LLC v. Robbins*, (8th Cir. No. 25-1819), the district court concluded the Library

Section was likely facially unconstitutional under the First Amendment and enjoined its enforcement. App.Vol.2.532–533, R.Doc.141 at 6–7; App.Vol.2.561, R.Doc.141 at 35.

## II. Plaintiffs Sue to Enjoin SF496.

More than six months after SF496 became law, Plaintiffs sued and moved for a preliminary injunction against State Defendants' enforcement of SF496 altogether (though their arguments focused only on the Library Section, Instruction Section, and Parental Notice Section). App.Vol.1.360–361, R.Doc.121 at 157–158. Plaintiffs alleged violations of the Free Speech, Due Process, and Equal Protection Clauses of the United States Constitution, and the Equal Access Act, 20 U.S.C. § 4071.

Plaintiffs allege a climate of fear and hostility in the wake of SF496; SF496 caused them to be "more reluctant to be 'out' about their identities at school." App.Vol.1.176, R.Doc.115-1 at 3; App.Vol.1.359, R.Doc.121 at ¶ 637. Plaintiffs fear their in-school expression might cause teachers to be disciplined for supporting Plaintiffs' gender identity or sexual orientation. App.Vol.1.259, R.Doc.121 ¶ 180. Plaintiffs allege some schools interpret SF496 to prohibit clubs called gender sexuality

alliances ("GSAs") from gathering and so have closed or limited GSA activities. App.Vol.1.259–260, R.Doc.121 ¶¶ 182–185.

Plaintiff "A.C.," the sole student plaintiff under seventh grade, alleges that she fears "prompting in-class discussion of LGBTQ+ issues" for fear that it "would be prohibited or lead to discipline." App.Vol.1.329, R.Doc.121 ¶ 492. Despite that continued expression, neither A.C. nor any student Plaintiff alleges even a threat of discipline against them.

A not-for-profit organization based in Des Moines called Iowa Safe Schools also sued. App.Vol.1.206–208, R.Doc.121 ¶¶ 5–6. Iowa Safe Schools gives resources and support for students throughout Iowa. *Id.* It serves at least 4,000 students representing over 100 GSAs across the State; some school districts have closed some of Iowa Safe Schools's member GSA chapters. App.Vol.1.208–209, R.Doc.121 ¶ 7.

Plaintiffs ultimately claim SF496's Parental Notice Section, Instruction Section, and Library Section are unconstitutionally void for vagueness, violate their First Amendment rights, violate their Fourteenth Amendment equal protection rights, and violate the Equal Access Act of 1984. App.Vol.1.205, R.Doc.121 at 2. Plaintiffs requested injunctive relief against enforcement of SF496 in total. For purposes of

this appeal, they only facially challenged at the preliminary injunction stage those three parts of the law.

## III. District Court Preliminarily Facially Enjoins Two-Sevenths of the Instruction Section and the "Accommodations" Part of the Parental Notice Section.

After this Court vacated the district court's earlier facial injunctions in this case, Plaintiffs amended their complaint and moved for renewed facial injunction. *See* App.Vol.2.535, R.Doc.141 at 9. After a preliminary injunction hearing, jointly held with a nonconsolidated related case with its own separate appeal, *see Penguin Random House, LLC v. Robbins*, (8th Cir. No. 25-1819) (in which book publishers and authors sought facial injunctive relief only against enforcing SF496's Library Section), the district court issued an opinion granting in part Plaintiffs' request for a preliminary injunction. App.Vol.2.561, R.Doc.141 at 35.

The Court found that the risk of discipline for the educator Plaintiffs justified standing to challenge the Parental Notice Section. App.Vol.2.539–540, R.Doc.141 at 13–14. Then, finding the word "accommodation" to be too vague to be enforceable, the district court enjoined enforcement of the Parental Notice Section as to any

accommodation by licensed educators other than relating to pronouns. App.Vol.2.558–559, R.Doc.141 at 32–33; App.Vol.2.561, R.Doc.141 at 35.

The district court found that A.C. and the educator plaintiffs had standing to challenge the Instruction Section, because A.C. allegedly may face discipline under school disciplinary policies and procedures for raising gender identity or sexual orientation in class and the educator Plaintiffs like Guttman also face a "credible threat of discipline" if he violates the law. App.Vol.2.538–539, R.Doc.141 at 12–13.

The court then decided Plaintiffs were likely to succeed on their claim that enforcing two out of the seven words in the prohibited instruction included in the Instruction Section was unconstitutional. App.Vol.2.548, R.Doc.141 at 22. The district court found that the terms "promotion" and "programs" did not fit into the curricular requirements it believed could justify a restriction. App.Vol.2.546–548, R.Doc.141 at 20–22. Rather than wait for an as-applied challenge, the district court facially enjoined enforcement of those two-sevenths of the statute. App.Vol.2.561, R.Doc.141 at 35.

Both parts of the injunction are "universal" in that they purport to bind State Defendants from enforcing the laws against both Plaintiffs and nonparties. *Cf. Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 (2025).

Because it determined Plaintiffs were likely to succeed on the merits, the district court found Plaintiffs faced irreparable harm and therefore that the balance of equities favored an injunction. App.Vol.2.560, R.Doc.141 at 34. The court preliminarily enjoined enforcement of SF496's Parental Notice Section, Library Section, and Instruction Section. App.Vol.2.561, R.Doc.141 at 35.

This appeal followed.

## SUMMARY OF THE ARGUMENT

**I.** The district court erred in determining that the Parental Notice Section was unconstitutionally void for vagueness by using the word "accommodation." App.Vol.2.558–559, R.Doc.141 at 32–33. Both the professional licensed educators and courts are equipped to understand "when a student requests an 'accommodation' . . . 'intended to affirm the student's gender identity.'" *Id.* The district court erred in granting a facial pre-enforcement challenge enjoining enforcement of this section of law

rather than allowing an as-applied challenge to be brought if any application of the law was or appeared to be unconstitutional.

**II.** The district court abused its discretion in determining Plaintiffs were likely to succeed in challenging two-sevenths of the Instruction Section as unconstitutionally vague. Before holding a statute void-for-vagueness, courts examine whether there is a plausible construction narrowing the statute to thereby avoid a vagueness issue. Here, reading the words of the statute together would have done just that. And even if the district court believed that only a supermajority of the law was enforceable and constitutional, a gerrymandered facial injunction is not what Plaintiffs asked for and was improper. That was error.

Applying ordinary tools of construction, the Instruction Section's list of prohibited activities connotes a prohibition on the compulsory education functions of a school. Rather than looking at the statute in its proper context, including interpreting words like "promotion" and "program" by the company they keep, the court interpreted each word in isolation. App.Vol.2.543–548, R.Doc.141 at 17–22. Only then was it able to repeat from its now-vacated first injunction that the Instruction

Section covers a "too broad and disconnected from mandatory classroom instruction" conduct, including clubs. App.Vol.2.554, R.Doc.141 at 28. But the standard tools of statutory interpretation reveal that the Section applies only to the mandatory, instructional functions of a school, not to extracurricular activities.

The court said it must interpret the law to include "'girls' and 'boys' sports teams" as well as all clubs that "revolve around gender identity" like GSAs. App.Vol.2.554, R.Doc.141 at 28. Not so. Precedent required the court to consider whether the statute was "readily subject to a narrowing construction." And it would have been. Just as this Court found the first time on appeal, the district court should not read a law intended to stop mandatory instruction relating to sexuality and gender identity for elementary schoolers to preclude girls' and boys' sports teams or any other club or elective activity.

**III.** Just as in the first appeal leading to vacatur of the preliminary injunction, the preliminary-injunction factors weigh against an injunction again. Plaintiffs' lack of likelihood of success on the merits dooms their motion. This law has been in effect for large parts of three of the past four semesters. The status quo was the law being enforceable.

To the extent irreparable harm exists, it is borne by the State, which faces injury each day it is enjoined from enforcing its duly enacted statutes. The balance of equities thus weighs against issuance of the extraordinary remedy of an injunction.

This Court should vacate the preliminary injunction.

## ARGUMENT

"A preliminary injunction is an extraordinary remedy," and the movant bears the burden to establish it is warranted. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When determining whether to issue a preliminary injunction, district courts consider: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Jet Midwest Int'l Co., v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020) (quotation marks omitted).

The probability of success on the merits is the most important factor, though no single factor is determinative. *See id.* And because Plaintiffs here seek to enjoin the enforcement of a duly enacted state statute, they must satisfy the more rigorous requirement that they are

"*likely* to prevail on the merits." *Rounds*, 530 F.3d at 730 (emphasis added).

Plaintiffs do not meet that burden because they have neither established standing nor shown that SF496 likely violates any of their rights. The district court thus abused its discretion in issuing the preliminary injunction. This Court should vacate the injunction.

## I.    STANDARD OF REVIEW

This Court reviews a district court's decision to grant a preliminary injunction for abuse of discretion, reviewing legal conclusions de novo and factual findings for clear error. *See Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). And constitutional facts are reviewed de novo. *See Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013).

A district court abuses its discretion when granting a preliminary injunction by disregarding "a relevant factor that should have been given significant weight." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1055 (8th Cir. 2020).

## II. REQUIRING SCHOOLS TO NOTIFY PARENTS ABOUT "ACCOMMODATIONS" ATTEMPTING TO FACILITATE THEIR CHILDREN'S TRANSITION IS CONSTITUTIONAL.

Parents deserve to know if their children seek to medically or socially transition to a gender identity different from those children's birth sex. Given concerns that schools or their employees might disagree, Iowa enacted a statute ensuring that any gender-identity related accommodation, including changed pronouns, be accompanied by parental notice.[3]

### A. The Parental Notice Section Is Not Vague.

Plaintiffs contend that this section is unconstitutionally vague—so much so that it is impossible to reasonably comply with it. But the edge hypotheticals that Plaintiffs—and the district court—rely on are better suited to as-applied challenges. That is, if any unreasonable application of this law ever happens or appears to be imminent. Far more likely as an outcome is that this law—which has been in effect since July 1, 2023—

---

[3] The district court explained that the "Educator Plaintiffs only have standing to raise the void-for-vagueness challenge [] and no other Plaintiffs have standing at all. The Court therefore will not address the equal protection or viewpoint-discrimination claims." App.Vol.2.560, R.Doc.141 at 34n5. Defendants do not challenge the district court's conclusions on standing for purposes of this appeal.

uses words that any licensed educator should be able to understand, and thus unintentional violations of the law are unlikely.

A statute "is unconstitutionally vague" under the Due Process clause "if it fails to provide adequate notice of the proscribed conduct and lends itself to arbitrary enforcement." *Parents Defending Educ.*, 83 F. 4th at 668 (quotation marks omitted); *see FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Such a law is "so uncertain that citizens forgo protected speech to steer clear of punishment." *Gerlich v. Leath*, 152 F. Supp. 3d 1152, 1179 (S.D. Iowa 2016), *aff'd*, 861 F.3d 697 (8th Cir. 2017).

A statute is not unconstitutionally vague simply because there may be legitimate questions of statutory interpretation. *Farkas v. Miller*, 151 F.3d 900, 906 (8th Cir. 1998); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010) ("perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.").

Rather, a court should first determine whether the statute is "readily subject to a narrowing construction." *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976) (quoting *Erznoznik v. City of*

*Jacksonville*, 422 U.S. 205, 216 (1975)); *see also* Iowa Code § 4.4(1) (statutes are presumed constitutional).

If it is, then courts should apply it accordingly. Courts use standard tools of construction to give words their ordinary meaning when assessing a vagueness challenge. *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 958 (8th Cir. 2019). "Context is king" when interpreting Iowa statutes. *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016).

The district court here did not apply binding vagueness precedent in reaching the result that the word "accommodation" in Iowa Code section 278.3 was unconstitutionally vague. The key analytical error appeared to be comparing the undefined term "accommodation" in Iowa Code section 278.3 to the undefined term "respect" in *Parents Defending Educ.*, 83 F.4th at 668–669, to support a void for vagueness finding. App.Vol.2.558, R.Doc.141 at 32. The reliance on *Parents Defending Education* by the district court is misplaced.

The term "respect" relates to a person's feelings and, as this Court noted, "officials are left to determine on 'an ad hoc and *subjective basis*' what speech is 'disrespectful' and subject to discipline, and what speech

is acceptable." *Parents Defending Educ.*, 83 F.4th at 669 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972) (emphasis added). Whether a student's conduct or statement regarding another student's gender identity is considered "disrespectful" is distinguishable from a request from a student for "an accommodation that is intended to affirm the student's gender identity from a licensed practitioner."

Even if the district court's interpretation were plausible, it should not have rendered the Section void for vagueness because the statute is "readily subject to a narrowing construction." *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 60 (1976). The district court abused its discretion in jumping to a void-for-vagueness ruling. SF496's Instruction Section should not be enjoined.

## B.    The Parental Notice Section Is Not Even Ambiguous.

The use of "accommodation" is not ambiguous. Where the language of a statute is plain and unambiguous, a court must read the statute as it is written. *See*, *e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997); *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000). "In interpreting a statute," this Court begins its "inquiry with the language of the statute." *Doe v. Dep't of Veterans Affs. of U.S.*, 519 F.3d 456, 461

(8th Cir. 2008); *see United States v. Hansl*, 439 F.3d 850, 853 (8th Cir. 2006). If the plain language of the statute is unambiguous then it controls. *Tr. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 329 (8th Cir. 2006). This Court's role is to interpret and apply statutes as written, for the power to redraft laws to implement policy changes is reserved to the legislative branch. *United States v. White Plume*, 447 F.3d 1067, 1072 (8th Cir. 2006).

Here, if a student requests an accommodation from a licensed practitioner—any accommodation or "the providing or what is needed or desired for convenience"—intended to affirm the student's gender identity, then that triggers the parental notification requirement.

Even if that is vague—it is not—the Legislature included pronouns as an example. The district court suggested, as an example of vagueness, that a student named "Harriett" who wanted to be called "Harry" would be confusing for educators. App.Vol.2.559, R.Doc.141 at 33. Educators understand that context matters, particularly in assessing whether a student intends that an accommodation affirm their gender identity. For example, if Harriett changed her physical appearance (clothing, makeup,

hair style, etc.), engaged in other conduct, or made other statements that evidenced that she intended to be called Harry as a way to affirm her gender identity rather than adopting a nickname, then it would trigger the parental notification requirement. Licensed practitioners already understand and apply the concept of accommodations in a variety of contexts. *See*, *e.g.*, Rehabilitation Act of 1973, § 504, 29 U.SC. § 794(a); Individuals with Disabilities Act, § 601, 20 U.S.C. §1400; and the Americans with Disabilities Act, § 202, 42 U.S.C. § 12132.

A statute is "unconstitutionally vague" if it "fails to provide adequate notice of the proscribed conduct and lends itself to arbitrary enforcement." *Parents Defending Educ.*, 83 F.4th at 668 (quotations omitted). But Plaintiffs' allegations and declarations prove that Plaintiffs and non-party students and staff know what the Section requires, but object to having to comply.

Despite the district court contending that it was unknowable what an "accommodation" could mean, several declarants in this case detailed their extensive efforts to avoid triggering parental notice. Indeed, one non-party educator declared that she understands what the law means and has created "workarounds" to avoid triggering the law's

requirements as best she can. App.Vol.1.75–76, R.Doc.115-9 ¶¶ 23–26; App.Vol.1.60, R.Doc.121 ¶ 197. She further asserted that she has chosen not to comply with the law and had even informed her former principal of that intent. App.Vol.1.76–77, R.Doc.115-9 ¶¶ 27–30.

Although Plaintiffs claim they do not know what might amount to a "request" for an "accommodation" under this Section, their own declarant establishes otherwise. Far from alleging the law "fails to provide adequate notice of the proscribed conduct," this declarant knows exactly what the Parental Notice Section proscribes, and she is doing her best to conduct herself and instruct her students to avoid having to report any request for an accommodation.

This educator declarant is not alone. Other declarants—including one Plaintiff Educator—establish that they understand what the law requires but object to such obligations. *See, e.g.*, App.Vol.1.57, R.Doc.115-7 ¶¶ 28 (student made a request for an accommodation that would trigger Parental Notice Section and the educator informed the student how SF496 would require the educator to respond, so the student retracted the request); App.Vol.1.100, R.Doc.115-12 ¶ 18 (teacher describing scenario where teacher knew the Parental Notice obligation would arise);

App.Vol.1.158–159, R.Doc.115-17 ¶ 8 (ISS explaining how to educate school staff on what the Parental Notice Section requires and when it is triggered). Although some Plaintiffs and others describe policy objections to the law, the arguments they lodge are not about vagueness at all. And again, in this facial injunction posture it must be impossible to enforce the law constitutionally to sustain the preliminary injunction.

The final thrust of Plaintiffs' vagueness argument is that educators do not know whether mere attendance at a GSA meeting triggers the Section. The statute's text should quell that concern.

The section requires reporting to a school administrator when a student "requests an accommodation" from a licensed practitioner, school district employee to "affirm the student's gender identity." Iowa Code § 279.78(3). The Legislature then gave an example of what that looks like: a student requests a licensed practitioner to use "a name or pronoun different than the name or pronoun assigned to the student in the school district's registration forms or records." *Id.*

The plain text of the law thus gives clear guidance—there is no need to turn to statements by legislators for or against the bill. *Contra* App.Vol.1.188, R.Doc.115-1 at 24.

Perhaps because it would be a tall task, Plaintiffs fail to tie their hypothetical—attending a GSA meeting, App.Vol.1.192, R.Doc.115-1 at 28—to the statute's text. Attending a student club or activity is not "requesting" an "accommodation." If a student attended the meeting and introduced herself to the club's teacher sponsor by "the name or pronoun assigned to the student in the school district's registration forms or records," then the Parental Notice Section is not triggered. App.Vol.1.225, R.Doc.121 ¶ 71.

But if the student attended the meeting and asked the teacher sponsor to address her by a name or pronoun different from the one in her registration records, with the intent for the accommodation to affirm the student's gender identity, then the Parental Notice Section would be triggered. Mere attendance at a student organization meeting has nothing to do with the Section—attending a meeting does not ask ("request") anything of a teacher sponsor, no less an ask for the teacher to make an adaptation or adjustment ("accommodation") to affirm gender identity.

It is unclear what historical fact Plaintiffs believe attending a GSA meeting establishes; after all, GSAs are "groups that unite LGBTQ+"

students" and "allied" students. App.Vol.1.110–111, R.Doc.115-13 ¶¶ 10. But even if attendance at GSA meetings amounted to some announcement about one's gender identity, that fact alone does not trigger the Parental Notice Section, because it is not a request for anything, no less a request for an accommodation to affirm one's gender identity.

In sum, the facial injunction here against a state law intended to ensure that parents are informed about major life decisions relating to their children is an abuse of discretion. Even if there is the potential for requiring parental notice in this context to run afoul of some other source of law, the better course is to raise an as-applied challenge. This Court should vacate the injunction entered below.

## III. THE DISTRICT COURT'S CONCLUSION THAT TWO WORDS IN THE STATUTE MUST BE FACIALLY ENJOINED UNDER THE FIRST AMENDMENT IMPROPERLY APPLIES *NETCHOICE*.

Plaintiffs chose to "litigate these cases as facial challenges" and that choice "comes at a cost." *NetChoice*, 603 U.S. at 723. That is especially so when the facial relief Plaintiffs seek is a universal injunction. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2548 (2025); App.Vol.1.360, R.Doc.121 ¶ B (asking for an injunction "[d]eclaring that SF 496 is unconstitutional on

its face"). Here, the district court acknowledged that the operative portion of the Instruction Section included "seven relevant words." App.Vol.2.546, R.Doc.141 at 20. Of those seven words, the district court found two to impose constitutionally prohibited actions on Defendants. App.Vol.2.548, R.Doc.141 at 22. Under *NetChoice*, Plaintiffs bear a burden to establish that "a substantial number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." 603 U.S. at 723 (cleaned up).

The State respectfully asks this Court to confirm that under *GLBT Youth* and *NetChoice* that when Plaintiffs have not shown that a substantial number of the law's applications are unconstitutional as compared to its plainly legitimate sweep that a universal injunction against enforcing that law is an abuse of discretion. For example, here, the district court admits that the substance of the law largely regulates compulsory education during the school day. App.Vol.2.547–548, R.Doc.141 at 21–22; App.Vol.2.557, R.Doc.141 at 31. And the district court admits that textually five of the seven operative words may be constitutionally applied. App.Vol.2.548, R.Doc.141 at 22. And to the extent that the hypotheticals animating the district judge's facial

injunction occur, there is no impediment to challenging that specific unconstitutional application as applied. *See* App.Vol.2.545, R.Doc.141 at 19.

Indeed, Plaintiffs here do not *only* seek to facially enjoin two words of the instruction section—they seek to enjoin enforcement of *the whole law*. And rather than argue for a narrower injunction in the alternative, Plaintiffs rejected the propriety of partial invalidation of the law. App.Vol.1.185, R.Doc.115-1 at 21; App.Vol.2.466 R.Doc. 139 at 27 ("It's not [an as-applied challenge]. It's a facial challenge."). The district court's *sua sponte* gerrymandered facial injunction appears to be an attempt to create a denominator that can justify itself. But that is not what the plaintiffs asked for. *See Sineneng-Smith*, 590 U.S. at 375–76. The district court erred in entering such a facial injunction.

## A. The Instruction Section Applies to Mandatory Curricular Instruction and Thus Survives Scrutiny.

Before getting into Plaintiffs' failure to meet the high burden to justify an injunction under *NetChoice*, this Court should also understand that the district court erred in interpreting the Instruction Section to apply to noncurricular conduct. This independent error could be characterized as a *NetChoice* step one failure, but is worth independent

highlighting because it does not reflect this Court's decision in *GLBT Youth*, 114 F.4th at 670 ("Meanwhile, the district court insisted the Instruction Section could only be interpreted in an 'absurd' manner.").

The error stems from a misunderstanding of this Court's admonition to "referenc[e] several canons of construction that may [] reveal[] a narrower, reasonable interpretation, such as the canons of constitutional-avoidance, *noscitur a sociis*, and Iowa's admonition to interpret its laws reasonably and in a manner feasible of execution." *Id.* (citing Iowa Code §§ 4.4(3)–(4)). Indeed, Iowa Code chapter 4 specifically calls to interpret Iowa laws in accord with the Constitution while giving effect to the entire state. Iowa Code §§ 4.4(1), (2).

The district court's error compounded after this Court's opinion in *Walls v. Sanders*, which clarified the breadth of authority for States to enact laws relating to curriculum and speech. 2025 WL 1948450 (8th Cir. July 16, 2025). Perhaps most importantly here, Arkansas's law applied to any "communication by a public school employee, public school representative, or guest speaker." *Id.* at *1 (quoting Ark. Code §§ 6-16-156(a)(1)–(3)). Nothing in Arkansas's law carves out clubs or

extracurricular events at school—and explicitly included trainings that occurred outside the classroom setting. Ark. Code §§ 6-16-156(a), (d), (e).

Indeed, this Court agreed that the teacher plaintiffs in that case did not even have standing to assert that their speech was chilled—because any alleged censored speech "was the government's speech, not the teachers', so any chill was not harming their speech rights." *Id.* at *2. As explained further below, that analysis, too, should apply here to contentions that teachers' "promotion" of certain activities gives rise to their speech rights being infringed.

*Walls* explained that "classroom materials and instruction" can "constitute the government's own speech." *Id.* at *3. And it clarified that "[s]tudents do not possess a supercharged right to receive information in public schools that alters these principles." *Id.* at *4. Indeed, "students cannot oblige the government to maintain a particular curriculum or offer certain materials in that curriculum based on the Free Speech Clause." *Id.*

*Walls*, reversing a district court's facial injunction against Arkansas's law prohibiting school indoctrination, was also careful to explain the deference to the political process in determining what is

appropriate for schools to "change the curriculum." *Id.* at *6. This Court concluded by recognizing, "students' concern—whether in this case or in the abstract—about a government that decides to exercise its discretion over the public school curriculum by prioritizing ideological interests over educational ones. But the Constitution does not give courts the power to block government action based on mere policy disagreements." *Id.*

Applying *GLBT Youth* and *Walls* to the Instruction Section should find it, again, survives appropriate scrutiny. The Instruction Section says a "school district shall not provide any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation." Iowa Code § 279.80. Context reveals that the Section applies only to mandatory portions of a school's function; it does not extend to extracurricular activities like after-school clubs.

The statute's list of prohibited activities connotes a prohibition on the compulsory education functions of a school. When words grouped together share a "common denominator" to which the list may be reduced, the familiar interpretive canon—*noscitur a sociis*—may apply. *See GLBT Youth*, 114 F.4th at 670; A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 195–198 (2012). That canon teaches that "a

word is known by the company it keeps," *Dubin v. United States*, 599 U.S. 110, 124 (2023), and is "wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to" legislative acts, *United States v. Kidd*, 23 F.4th 781, 786 (8th Cir. 2022) (quotation marks omitted)).

Applying that tool, when the Section is read as a whole, "instruction" and "program" and "promotion," alongside "curriculum" and "test" and "survey" and "questionnaire," reaffirm that the section applies to a school's mandatory, instructional functions—not to extracurricular activities like clubs.

The statute's title—"Sexual orientation and gender identity— prohibited instruction"—similarly shows a narrow construction is the correct one: the Instruction Section applies limitations on proper *instruction*, the compulsory functions of a school. *See Des Moines Flying Serv.*, 880 N.W.2d at 220–221 (applying title-and-headings canon); *see Reading Law* at 221–224.

Reading the whole enactment, including the Instruction Section, reinforces this conclusion. Other parts of SF496 incorporate or reference the Instruction Section (Iowa Code § 279.80) when discussing what is

required of various compulsory instruction offerings, like in the discussion of the "kindergarten program," SF496 § 2 (Iowa Code § 256.11(2)), and of what "shall be taught in grades one through six," SF496 § 2 (Iowa Code § 256.11(3)). Context thus clarifies that the Instruction Section governs compulsory instructional functions and does not place limits on extracurricular activities like after school clubs.

Given this Court's recent precedents in *GLBT Youth* and *Walls*, reading the Instruction Section to prohibit any unconstitutional conduct is an error. It is not even clear that if the law *did* prohibit certain clubs, that that would be unconstitutional. *See Walls*, 2025 WL 1948450, at *6. And as Defendants will explain next, even if the Instruction Section prohibited certain clubs and that prohibition was unconstitutional, Plaintiffs' fail to meet their heavy burden to show that the limited unconstitutional scope justifies the facial relief received.

**B.    The *NetChoice* Factors Establish A High Burden For Relief.**

Plaintiffs bringing a facial suit based on the First Amendment cannot succeed unless they satisfy rigorous standards. *See NetChoice*, 603 U.S. at 723–724, *United States v. Hansen*, 599 U.S. 762, 769 (2023). That standard is "hard to win." *GLBT Youth*, 114 F.4th at 669 (quoting

*NetChoice*, 603 U.S. at 723. And "[i]nvalidating a law on this basis should be done only as 'a last resort.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

"The first step in the proper facial analysis is to assess the state laws' scope." *NetChoice*, 603 U.S. at 724. That asks what activities the law prohibits or regulates and by what actors. *Id.* The second step asks a court "to determine which of the laws' applications violate the First Amendment." *GLBT Youth*, 114 F.4th at 669–70. The third step then "measure[s] the unconstitutional applications against the remaining provisions." *Id.* at 670. Thus, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (citing *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).

*NetChoice* directly addressed the error characterized by gerrymandering facial challenges to ensure a denominator at step three that justifies injunctive relief. *NetChoice*, 603 U.S. at 724. In *NetChoice* itself, the Court complained that both the plaintiffs and defendants "alike treated the laws as having certain heartland applications, and mostly confined their battle to that terrain." *Id.* The reversed Courts of appeals

"also mostly confined their analysis in that way." *Id*. But in focusing on the "heartland" applications—where most of the law's effect could be felt—the Courts did not address "the full range of activities the laws cover." *Id*. Even though significant parts of the law likely unconstitutionally regulated conduct, that was enough to vacate the facial injunction. *Id*. at 744–745. The Supreme Court characterized that error—looking for unconstitutional applications and judging the scope of sought relief more narrowly—as "treat[ing] these cases more like as-applied claims than like facial ones." *Id*. at 724.

For the Plaintiffs to succeed on their First Amendment claim, they thus bear three heavy burdens. First, they must properly define the scope of the law's application. Second, they must show the universe of unconstitutional applications. And finally, they must show that the Instruction Section "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *NetChoice*, 603 U.S. at 743–744 (internal citation omitted). "Even in the First Amendment context, facial challenges are disfavored." *Id*. at 744. When plaintiffs choose to bring a facial challenge—seeking to invalidate the law as a whole—they must carry the burden on all those issues. *Id*.

## C.    Applying *NetChoice*, Plaintiffs Claims Fail.

The Instruction Section applies to compulsory classroom instruction and prohibits school districts from providing any "curriculum, test, survey, questionnaire, promotion, or instruction relating to gender theory or sexual orientation to any students in kindergarten through grade six." Iowa Code § 279.80; *see also* App.Vol.2.541–542, R.Doc.141 at 15–16.

The law prohibits instruction on "gender theory" and "sexual orientation" to students in kindergarten through grade six. *See* Iowa Code §§ 279.80(1)(*a*) (defining "gender theory" as "the concept that an individual may properly be described in terms of an internal sense of gender that is incongruent with the individual's sex as either male or female [and] 'gender theory' includes the concept that an individual who experiences distress or discomfort with the individual's sex should identify as and live consistent with the Individual's internal sense of gender, and that an individual can delay natural puberty and develop sex characteristics of the opposite sex through the use of puberty blockers, cross-sex hormones, and surgical procedures."); 216.2(16) (defining "sexual orientation" as "actual or perceived heterosexuality,

homosexuality, or bisexuality"). In Iowa, there is a legal requirement for children of a certain age to receive an education and, consequently, receive compulsory classroom instruction. *See*, *e.g.*, Iowa Code chapter 299.

The actors regulated by the law are school districts. Iowa Code § 279.80(2). The scope of the regulation is compulsory classroom instruction in the form of any "program, curriculum, test, survey, questionnaire, promotion, or instruction." *Id*. Laws routinely regulate classroom instruction.

The district court erred in failing to properly define the scope of Iowa's law at *NetChoice* step one. App.Vol.2.542–548, R.Doc.141 at 16–22 (To be sure, Defendants are recharacterizing the Court's analysis to fit it within *NetChoice*'s three steps. The district court only referenced *NetChoice* step three in its analysis of the Instruction Section. App.Vol.2.557, R.Doc.141 at 31.).

Indeed, the court began by explaining that substantial portions of the law that are "not facially unconstitutional." App.Vol.2.551, R.Doc.141 at 25. That includes, by the district court's own counting, about five-sevenths of the operative words of the challenged statute. App.Vol.2.548,

R.Doc.141 at 22. And it includes most of the time that the law may be enforced—during the school day in compulsory classroom instruction. App.Vol.2.542, R.Doc.141 at 16 (concluding five of the seven operative words apply only to "compulsory parts of the curriculum"); App.Vol.2.543–544, R.Doc.141 at 17–18 (concluding a sixth word— "program"—applies to compulsory classroom instruction). But then the court goes astray by deciding to narrow the inquiry as to whether some applications of the law are unconstitutional in determining whether to facially enjoin those parts of the law. App.Vol.2.551–557, R.Doc.141 at 25–31 (conducting two separate analyses: one for words applying only to compulsory curriculum instruction and one for the words "program" and "promotion"). "In short" the district court treated this case "more like [an] as-applied claim[] than like [a] facial one[]." *NetChoice*, 603 U.S. at 724.

That circular logic is forbidden by *NetChoice* step one, which requires a plaintiff to properly define a statute's scope. This error is even more extreme than the "heartland" error *NetChoice* highlighted. 603 U.S. at 724. There, the Courts assessed the most common applications but erred in failing to consider the "full range of activities the laws cover." *Id*. Here, the Court hypothesized some potentially unconstitutional

applications as justification to enjoin enforcement despite a largely constitutional heartland. App.Vol.2.551, R.Doc.141 at 25.

Even on Plaintiffs' own terms, they have facially challenged the *whole* Instruction section—there is no equivocation. Indeed, Plaintiffs expressly disavowed the propriety of any partial invalidation, doubling down on their sole request: enjoining the section in full. App.Vol.1.185, R.Doc.115-1 at 21; App.Vol.2.466, R.Doc.139 at 27 (stating this is not an an "as-applied challenge . . . It's a facial challenge."). *NetChoice* precludes an injunction against enforcing part of the law, or certain hypothetical as-applied applications of a law, when the full law is challenged as constitutional.

Indeed, at *NetChoice* step two, the district court found the law was constitutional with respect to the (i) restriction (prohibition of gender theory and sexual orientation instruction to children in grades kindergarten through six); (ii) the actors that are covered by the restriction (school districts), and (iii) the scope of the restriction as applied to "curriculum," "test," "survey," "questionnaire," and "instruction." App.Vol.2.561, R.Doc.141 at 35. By contrast, the district

found that the scope, only as it relates to "program" and "promotion," could violate the First Amendment in some circumstances. *Id.*

The district court thus concluded that the vast majority of the operative applications of the Instruction Section are constitutional.

Had the district court applied *NetChoice*, it should have weighed the law's applications that were constitutionally permissible against those that were not in determining whether the Plaintiffs carried their burden. *NetChoice*, 603 U.S. at 744; App.Vol.2.557, R.Doc.141 at 31 (acknowledging *NetChoice* step three). The district court found that enforcing the words "program" and "promotion" had unconstitutional applications that substantially outweigh the constitutional applications. App.Vol.2.557–558, R.Doc.141 at 31–32. Yet that relied almost exclusively on whether certain GSA clubs were closed and whether teachers could promote attendance in those clubs. App.Vol.2.554–557, R.Doc.141 at 28–31. The court admits that "program" and "promotion" could have constitutional applications—but that "Defendants have not established any constitutional applications of the law, except, at most, when a 'program' or 'promotion' is provided as part of a mandatory school curriculum." App.Vol.2.557, R.Doc.141 at 31.

This core error builds on the earlier errors of failing to undertake Plaintiffs' burden at *NetChoice* step one and impermissibly shifts the burden then at *NetChoice* step two to Defendants. Defendants defended the Instruction Section as challenged—facially. And the law is constitutional—facially. Perhaps the law may be unconstitutionally applied—if it ever is, then an as-applied challenge is appropriate. The district court redefining the scope to facially enjoin two-sevenths of the law fails *NetChoice*—and Plaintiffs did not seek that result. App.Vol.2.452, R.Doc.139 at 13.

Plaintiffs chose to seek a facial injunction against enforcement of the whole law. App.Vol.2.452, R.Doc.139 at 13; App.Vol.2.506, R.Doc.139 at 67; App.Vol.2.529, R.Doc.141 at 3 ("Plaintiffs have not raised an as-applied challenge"). Under *GLBT Youth* and *NetChoice*, that is enough to defeat this second-entered facial injunction, which enjoined parts of the law without weighing all the constitutional applications against the unconstitutional.

To the extent that Plaintiffs seek to raise for the first time on appeal that the scope of the Instruction Section's two supposedly unconstitutional applications "substantially" outweigh the constitutional

ones, that is both forfeited, *see*, *e.g.*, *Wiser v. Wayne Farms*, 411 F.3d 923, 926 (8th Cir. 2005); App.Vol.1.185, R.Doc.115-1 at 21, and they have failed to meet their burden.

## IV. REMAINING PRELIMINARY-INJUNCTION FACTORS CAUTION AGAINST ENJOINING SF496.

Plaintiffs' failure to show they are "likely to prevail on the merits" dooms their motion for a preliminary injunction. *Rounds*, 530 F.3d at 732. Even so, the remaining factors weigh against an injunction.

### A. Plaintiffs Can Show No Irreparable Harm.

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quotation marks omitted). Plaintiffs fail across the board.

To the extent irreparable harm exists, it is borne by the State. Every day a State's duly enacted statutes are enjoined is an irreparable harm. *See Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (recognizing that whenever "a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a

form of irreparable injury") (quotation marks omitted)); *Texas Democratic Party v. Abbott*, 961 F.3d 389, 411 (5th Cir. 2020).

Plaintiffs' lack of irreparable harm is enough to vacate the injunction.

## B. The Balance of Equities and the Public Interest Do Not Favor an Injunction.

The district court's injunction facially enjoins enforcement of two words in the Instruction Section and any non-pronoun-related enforcement of the Parental Notice Section. After the first facial injunction was vacated, the district court strove to enjoin as much of the law as possible. But Plaintiffs sought a facial injunction. And the law is, as the district court found, at least generally sound. This semi-facial injunction constructed by the district court out of whole cloth does not serve the public interest. Even more so when the injunction prevents a common-sense requirement that parents be notified if the school wants to transition their children.

An injunction goes against the public interest for three key reasons. *First*, a "preliminary injunction is an extraordinary remedy." *Watkins*, 346 F.3d at 844. Even truer when plaintiffs seek to "thwart a State's presumptively reasonable democratic process." *Rounds*, 530 F.3d at 733.

*Second*, an injunction destabilizes the status quo. The Instruction Section has been enforced for three of the last four semesters. The Parental Notice Section was enforced from June 2023 until this injunction entered in March 2025. State Defendants simply seek to preserve the status quo—the law has been in place, and largely enforceable for more than a year for the Instruction Section and for two years for the Parental Notice Section. It should remain in force during the pendency of this litigation.

*Finally*, the Supreme Court recently clarified that universal injunctions "likely exceed the equitable authority that Congress has granted to federal courts." *CASA, Inc.*, 145 S. Ct. at 2548. Here, the district court granted a universal injunction—but it is not clear that "complete relief for the parties" that have standing depends on such an injunction at all. *Id.* at 2554. That is an independent basis to vacate the overbroad injunction against enforcing the law against nonparties—or even parties if that party lacks standing to challenge the law and thus is not entitled to the targeted relief of an injunction as to that party.

As a final note, the district court's attempt to impose a narrower injunction still includes significant *dicta* about how State Defendants, universally, may apply this law. That *dicta* risks placing State Defendants in contempt if there is a disagreement between these Plaintiffs and State Defendants as to how to enforce the law. That is a final reason why the advisory facial injunction here, based on hypothetical situations, is especially dangerous. The district court raised serious concerns about ways in which the law's application *could be* unconstitutional. If such a situation arises—or appears to be imminent—then a challenge to prevent that is proper. Instead, here, the injunction purports to enjoin enforcement of specific words in a comprehensive statute in a manner that will prove difficult to comply with. Such a result is neither mandated by the Constitution nor appropriate under the Judiciary Act. *See CASA, Inc.*, 145 S. Ct. at 2548; *GLBT Youth*, 114 F.4th at 671.

## V. THE DISTRICT COURT SHOULD HAVE DENIED THE CHALLENGE TO THE LIBRARY SECTION AS MOOT.

Plaintiffs also challenge the part of SF496 that prohibits age-inappropriate materials in Iowa Schools. App.Vol.2.531, R.Doc.141 at 5.

The district court facially enjoined enforcement of that section based on a ruling in a different case involving different plaintiffs. App.Vol.2.540, R.Doc.141 at 14 (citing *Penguin Random House LLC v. Robbins*, 774 F. Supp. 3d 1001 (S.D. Iowa 2025)). The district court explained that if this Court vacates the injunction in that case, that it "of course will abide by the Eighth Circuit's disposition of that appeal." *Id*.

Here, the district court explained, "[f]or reasons set forth in that ruling (which will not be repeated here), the [c]ourt will grant Plaintiffs' Motion for Preliminary Injunction as it relates to the Library Provision." App.Vol.2.540, R.Doc.141 at 14. The district court provided no analysis, nor did it apply the *NetChoice* factors here. Accordingly, the district court failed to meet the standard required to facially enjoin enforcement of a law.

Alternatively, the district court should have denied the Plaintiffs' request for a preliminary injunction of the Library Section as moot based on its earlier facial injunction in *Penguin Random House, LLC*. "Regardless of the outcome of this appeal, Iowa is enjoined against enforcing the Act. This [case] is moot." *Iowa Migrant Movement for Just. v. Bird*, 2025 WL 319926, at *1 (8th Cir. Jan. 24, 2025), *reh'g granted and*

*opinion vacated on other grounds*, 2025 WL 1140762 (8th Cir. Apr. 15, 2025). In *Iowa Migrant Movement for Justice*, this Court vacated a superfluous injunction issued by the same judge in a separate case enjoining enforcement of the same law. *Id.* That closely reflects the status of the facial preliminary injunction entered against the Library Section here. App.Vol.2.531, R.Doc.141 at 5. While this Court reopened *Iowa Migrant Movement for Justice* for rehearing due to procedural changes in the companion case, here there is no basis for this separate injunction.

An unreasoned universal facial injunction enjoining enforcement of a law whose enforcement is already enjoined is improper. The Court should reverse the injunction in this case, as the facial injunction as to the Library Section should have been denied as moot.

# CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

August 5, 2025

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

STEVEN BLANKINSHIP
*Deputy Attorney General*

ERIC WESSAN
*Solicitor General*

/s/ *Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,666 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

August 5, 2025            /s/ *Patrick C. Valencia*
                              PATRICK C. VALENCIA
                              *Deputy Solicitor General*

                              *Counsel for Defendants-Appellants*

# CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on August 5, 2025. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

August 5, 2025

/s/ *Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendants-Appellants*