IN THE

# United States Court of Appeals for the Eighth Circuit

―――――――――――

IOWA SAFE SCHOOLS, formerly known as GLBT Youth in Iowa Schools Task Force, *et al.*,

*Plaintiffs-Appellees*,

v.

KIMBERLY REYNOLDS, in her official capacity as Governor of the State of Iowa, *et al.*,

*Defendants-Appellants*,

MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent, *et al.*,

*Defendants*.

―――――――――――

On Appeal from the United States District Court
for the Southern District of Iowa
Case No. 4:23-cv-474
(The Honorable Stephen H. Locher)

―――――――――――

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

―――――――――――

BRENNA BIRD
Attorney General of Iowa

STEVEN BLANKINSHIP
*Chief Deputy Attorney General*

ERIC WESSAN
*Solicitor General*

September 26, 2025

PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

Table of contents ..........................................................................ii

Table of authorities .....................................................................iii

Argument......................................................................................1

    I.    As Plaintiffs' brief shows, the notice section is not vague; they just disagree with it.............................................. 1

    II.   Whether correctly read as covering only compulsory instruction or incorrectly read to encompass more, the instruction section is constitutional........................................................... 7

        A.    The Instruction Section covers only mandatory instruction...................................................... 7

        B.    Even if construed to extend beyond mandatory instruction, the Instruction Section is constitutional. ............................................... 12

    III.  Plaintiffs are not entitled to a facial injunction.................... 14

        A.    Plaintiffs are not entitled to a universal injunction................................................................. 14

        B.    The preliminary-injunction factors weigh against Plaintiffs. ............................................... 16

    IV.  Plaintiffs cannot meet the preliminary injunction factors to the library section so their preliminary injunction request is moot. ...................................... 19

Conclusion ................................................................................21

Certificate of compliance ........................................................23

Certificate of service ...............................................................24

Appellate Case: 25-2186    Page: 2    Date Filed: 09/29/2025 Entry ID: 5562276

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*,
  815 F.2d 500 (8th Cir. 1987) .................................................................... 19

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Trades Council*,
  485 U.S. 568 (1988) ................................................................................. 11

*Farkas v. Miller*,
  151 F.3d 900 (8th Cir. 1998) ...................................................................... 3

*GLBT Youth in Iowa Schools Task Force v. Reynolds*,
  114 F.4th 660 (8th Cir. 2024) ........................................................ 10, 11, 21

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010) ....................................................................................... 3

*Iowa Migrant Movement for Justice v. Bird*,
  2025 WL 319926 (8th Cir. Jan. 24, 2025) ............................................... 20

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ............................................................................... 7, 10

*NetChoice, LLC v. Bonta*,
  2025 WL 2600007 (9th Cir. Sept. 9, 2025) ............................................... 3

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
  83 F.4th 658 (8th Cir. 2023) ...................................................................... 2

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
  530 F.3d 724 (8th Cir. 2008) .............................................................. 19, 20

*Roudachevski v. All-American Care Centers, Inc.*,
  648 F.3d 701 (8th Cir. 2011) .................................................................... 20

*Tr. Of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*,
  450 F.3d 324 (8th Cir. 2004) ...................................................................... 2

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ..................................................................... 14, 15, 16

*Walls v. Sanders*,
  144 F.4th 995 (8th Cir. 2025) ..................................................... 7, 13, 14, 19

*West Virginia v. Envt'l Prot'n Agency*,
  597 U.S. 697 (2022) ................................................................................... 8

Appellate Case: 25-2186     Page: 3     Date Filed: 09/29/2025 Entry ID: 5562276

# TABLE OF AUTHORITIES—Continued

**Page(s)**

**Statutes**

20 U.S.C. § 1400 ........................................................................... 2
29 U.S.C. § 794 ............................................................................. 2
Iowa Code § 279.78 ...................................................................... 2
Iowa Code § 279.80 ................................................................. 8, 12
Iowa Code § 4.4 ............................................................................ 8
Iowa Code §§ 256.11 .................................................................... 8

iv

# ARGUMENT

Plaintiffs brought facial challenges seeking to enjoin enforcement of three parts of Iowa's comprehensive education reform bill. The district court entered a second injunction after this Court's earlier vacatur of a facial injunction entered against enforcement of those sections—including analysis on parts of the law that require notifying parents if the school seeks to give gender identity related accommodations to students and prohibiting teaching about sex or sexuality to elementary schoolers. There is no constitutional infirmity with a State mandating that schools keep parents apprised about major changes in students' lives like in the challenged Notification Section. And this Court vacated an earlier injunction enjoining enforcement of the Instruction Section—which limits what can be taught to Kindergarten through Sixth Grade students—and should do so again.

## I.  AS PLAINTIFFS' BRIEF SHOWS, THE NOTICE SECTION IS NOT VAGUE; THEY JUST DISAGREE WITH IT.

A person of reasonable intelligence knows what "accommodation" means in the context of the Notice Section—the requirement that a "licensed practitioner" inform a school administrator if the practitioner receives a request from a student for "an accommodation that is intended

1

to affirm the student's gender identity[.]" Iowa Code § 279.78(3). That section is not unconstitutionally vague. *See* Opening Br. at 23 (citing *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 668 (8th Cir. 2023)).

The plain meaning of "accommodation," providing what is needed or desired for convenience, tells educators what sorts of requests are covered. Thus, that unambiguous statutory language therefore controls. *See* Opening Br. at 26 (citing *Tr. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 329 (8th Cir. 2004)). Plaintiffs' only quibble with this point, and the related point that licensed practitioners are familiar with the meaning of "accommodation" from its appearance in other laws, *see* Opening Br. at 27, is that an online dictionary's definition of "accommodation" shows that the term also bears related meanings. Appellees' Br. at 20.[1] But they give no examples of how "adaptation," "adjustment," or "a reconciliation of differences" would

---

[1] Indeed, the objection to the fact that "accommodation" is used in other laws is not that the term itself is unclear; it is that accommodating a student's gender identity is not a part of an individualized education plan under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, or a 504 plan under the Rehabilitation Act, 29 U.S.C. § 794(a), *et seq.*

2

create a different outcome for a request from a student. That is unsurprising, given that those definitions are so closely related to the one the State put forth, but it is also irrelevant: that parties can argue over statutory interpretation, even of a statute alleged to restrict expression, does not make a statute unconstitutionally vague. *Farkas v. Miller*, 151 F.3d 900, 906 (8th Cir. 1998); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010).

Indeed, a recent opinion from the Ninth Circuit explained that the far more nebulous term "addictive feed" is not pejorative in the context of a law regulating social media. *NetChoice, LLC v. Bonta*, 2025 WL 2600007, at *14 (9th Cir. Sept. 9, 2025). There, the court applied normal interpretive tools to find that even the novel phrase "addictive feed," which could be interpreted in different ways, should be interpreted in the context of the statute. *Id.* at 14–15. Thus, a "person of ordinary intelligence [could] understand what conduct is prohibited by the Act. At bottom, the Act is not unconstitutionally vague." *Id.* at 15.

More, Plaintiffs' attempt to defend the district court's wrong conflation of "accommodation" with "respect" only confirms that

3

"Plaintiffs and non-party students and staff know what the Section requires, but object to having to comply." Opening Br. at 27.

Among their justifications for claiming vagueness are hypotheticals involving students who do not make a request, students who speak at an after-school club, students who discuss current events, students who speak with other students, and students whom the licensed professional does not know well. Appellees' Br. at 20–22. But most of those examples are plainly outside the Section's requirements; they do not involve a student making a request of a school employee at all, much less one for a gender-affirming accommodation. And even if a single hypothetical example of an unconstitutional application could be surmised, that is not enough to facially enjoin the application of the statute as to all other lawful applications.

And the examples that do fall within the Section show that Plaintiffs do not fear discipline based on a standardless regulation; they simply dislike the regulation.

Plaintiffs discuss the purported dangers of receiving an accommodation request from a student if the professional does not know that student well. Appellees' Br. 21. But their discussion instead shows

4

that professionals know how to ask questions that parse the reasons a student requests an accommodation and the goals the student hopes to achieve. Indeed, professionals often ask questions to parse students' intent and goals. Appellees' Br. at 21 (describing steps a professional could take to determine a student's intent); *id.*, App.Vol.I.99–100, R.Doc 115-12 ¶¶16–18 (school counselor describing past scenario where student confided in her, and explaining that she does not want to reveal that information to parents in the future but understands the Notice Section might require that).

Plaintiffs then cite the "context and content" of clubs meant to "provide vital support and safe spaces." Appellees' Br. at 22. But that commentary fails to substantiate fears that a professional might not know when a "student's expression on these topics 'cross[es] the line.'" *Id.* After all, attending a club meeting open to all—including those requesting and those not requesting an accommodation alike—cannot alone amount to a statement reasonably construed as making an affirmative request of a professional who also attends such a meeting, but instead school administrators' attempts to comply with the law.

Appellate Case: 25-2186    Page: 9    Date Filed: 09/29/2025 Entry ID: 5562276

Ultimately, Plaintiffs' concerns with the Notice Section reveal that many professionals do not struggle with understanding the meaning of "accommodation." Rather, those professionals simply do not want to inform a student's parents of the student's desire for a gender-affirming accommodation—indeed, some feel it is their moral duty not to do so. Appellees' Br. at 7 (citing App.Vol.I.76–77, R.Doc. 115-9 ¶ 30; App.Vol.I.102, R.Doc 115-12 ¶¶ 30–31).

And those are only the examples Plaintiffs themselves use to justify the preliminary injunction; the State's opening brief, at 27–31, identified even more. None of the examples shows that a licensed professional has trouble determining what constitutes an accommodation, when a student is making a request, or when a student is discussing the student's gender identity; and, unsurprisingly, none of the examples shows that a professional has trouble determining when a student is requesting an accommodation for the student's gender identity. What the examples do show is opposition to the requirement that professionals inform the student's parents, through the school administration, about that request.

In sum, Iowa adopted a law that requires licensed school professionals who receive certain information from students to share that

6

information with the students' parents. Some professionals do not want to—and, for that matter, neither do some of the students. "But the Constitution does not give courts the power to block government action based on mere policy disagreements." *Walls v. Sanders*, 144 F.4th 995, 1006 (8th Cir. 2025). The professionals' policy objections must be litigated before the Legislature, not the courts. They cannot cloak those objections in the disguise of vagueness to have them declared unconstitutional.

## II. WHETHER CORRECTLY READ AS COVERING ONLY COMPULSORY INSTRUCTION OR INCORRECTLY READ TO ENCOMPASS MORE, THE INSTRUCTION SECTION IS CONSTITUTIONAL.

### A. The Instruction Section covers only mandatory instruction.

Plaintiffs have now agreed that the first step in determining whether they are entitled to a preliminary injunction is determining whether the law covers their behavior. But rather than read the Instruction Section as a whole and in context, as statutory interpretation demands, they contend, as did the district court, that it must be analyzed individually—as if each of the seven terms defining school activities must be read isolated from each other. *Cf. Moody v. NetChoice, LLC*, 603 U.S.

7

707, 724–26 (2024); Iowa Code § 4.4. That path is foreclosed by Plaintiffs' choice to seek a facial injunction.

Nor is that how statutes are interpreted. And that piecemeal approach is particularly inappropriate here, where Plaintiffs demand an interpretation that creates constitutional problems while the State's reading—that is, the reading of the party charged with enforcing the statute—avoids those problems. *See* Iowa Code § 4.4(1).

Section 279.80 prohibits school districts from providing to kindergarteners through sixth graders "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation[.]" The title of that section is "Sexual orientation and gender identity—prohibited instruction." Iowa Code § 279.80. It is referred to in other parts of the statute that discuss what is to be taught to students. Iowa Code §§ 256.11(2) (program to be taught to kindergarteners is subject to section 279.80), 256.11(3)(*a*)(10) (human growth and development program to be taught to first through sixth graders is subject to section 279.80). Reading the list of governed activities in context, as one must, *see West Virginia v. Envt'l Prot'n*

*Agency*, 597 U.S. 697, 721 (2022), establishes that the Instruction Section covers just that: compulsory instruction.

Plaintiffs and the district court both assert that reading the covered activities together, applying the *noscitur a sociis* canon, does not lead to that straightforward conclusion because the seven terms are so distinct that reading them to apply only to compulsory instruction would denude them, particularly "program" and "promotion," of meaning. According to Plaintiffs and the district court, a program can be non-compulsory, and a promotion is simply an encouragement to do something. Appellants' Br. at 26–31; App.Vol.2.543–548, R.Doc 141 at 17–22. But as the district court recognized, "survey" and "questionnaire" have meanings independent of the education context and gain relevant meaning only through their association with "curriculum," "test," and "instruction." App.Vol.2.541–542, R.Doc.141 at 15–16.

Rather than do the same with "program" and "promotion," the district court chose to read them as if they were untethered to the other five terms. It did so not by looking to other places where the terms were used in conjunction with terms like those in the Instruction Section; it did so by looking to times when they were used standing alone. *Id.* at 18

Appellate Case: 25-2186    Page: 13    Date Filed: 09/29/2025 Entry ID: 5562276

(citing various sections of Iowa Code chapters 279 and 280 in which "program" and "promotion" are used in isolation). But the point of the canon is that the meaning of words in a list can be divined by their relation to each other rather than look to how they are used in other contexts—indeed, its "most common effect . . . is not to establish which of two totally different meanings applies but rather to limit a general term to a subset of all the things or actions that it covers." Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, at 196. Plaintiffs and the district court turn the canon on its head. And in so doing ignore this Court's reminder that facial injunctions "should be 'hard to win.'" *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660, 670 (8th Cir. 2024) (citing *Moody*, 603 U.S. at 723).

And their error is compounded by their choice to ignore the other contextual cues. The district court discounted the Instruction Section's title—"prohibited instruction"—by claiming that the use of "program" and "promotion" elsewhere indicated their meaning in the list. But the question was not whether the title could change the meaning of the terms; it was whether the title gave context to the use of the terms that would help determine whether they referred to compulsory instruction or

10

not. And the district court never applied the canon of constitutional avoidance in interpreting the meaning of the list.

Indeed, Plaintiffs fail to rebut the final impediment to the facial injunction entered by the district court here: improperly gerrymandering the challenge to the Instruction Section to enter a partial facial injunction. As Plaintiffs explain, the injunction they received "conclude[d] that the [Instruction Section], in part, is facially unconstitutional." Appellee Br. at 26. Plaintiffs brought a facial challenge against the whole section: all seven words. The district court granted a facial injunction "in part" against the two words challenged. That improper narrowing of the injunction flouts this court's admonition that facial injunctions are "hard to win." *GLBT Youth*, 114 F.4th at 670 (citation omitted).

But if the list is susceptible of both the district court's preferred reading and the State's, unless the State's construction is plainly contrary to the Legislature's intent, it is that construction—which avoids constitutional issues—that should control. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988).

11

**B.** **Even if construed to extend beyond mandatory instruction, the Instruction Section is constitutional.**

Plaintiffs also continue to contend that the Instruction Section, which is drafted without regard to viewpoint, (1) is viewpoint discrimination and (2) applies to forbidding certain "noncurricular speech." Appellee Br. at 32. Yet despite repeated invocations of impermissible viewpoint discrimination, Plaintiffs fail to point to the text to describe what viewpoint is being discriminated against. Recall that the Instruction Section prohibits schools from offering programs or promotions "relating to gender identity or sexual orientation[.]" Iowa Code § 279.80. Plaintiffs (and the district court) steal a base by construing this language as preventing discussion of "transgender or nonbinary identity and gay, lesbian, or bisexual orientation, while allowing expression that revolves around cisgender identity and heterosexual orientation[.]" Appellees' Br. at 32. The Section does no such thing. The base-stealing is clear from the district court's and Plaintiffs' example: sports.

Sports are not, contra the district court, *see* App.Vol.2.555, R.Doc. 141 at 29, divided based on gender identity. They are divided based on the durable biological distinction between sexes—a distinction

12

recognized under federal law. App.Vol.2.555, R.Doc. 141 at 29 (referring not to "girls and boys sports teams," but "'girls' and 'boys' sports teams"). Indeed, other than construing sports teams as "revolv[ing] around cisgender identity," *id.*, neither the district court nor Plaintiffs offer a single example of an afterschool activity or club based on or discussing heterosexuality or "cisgender" identity. Indeed, if such an activity or club existed, it too would be subject to Plaintiffs' incorrect reading of the Instruction Section, which forbids programs and promotions relating not to particular sexual orientations or gender identities, but to sexual orientation or gender identity at all. This is not viewpoint discrimination; it is a permissible exclusion of a particular topic from a limited public forum—a particularly appropriate exclusion, given the State's "legitimate pedagogical concern[]" that an age-inappropriate topic should not be included in a forum limited to persons of the inappropriate age. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988); *see also id.* at 272 ("a school must be able to take into account the emotional maturity of the intended audience").

Plaintiffs also take issue with *Walls v. Sanders*, which explained that students "cannot oblige the government to maintain a particular

curriculum or offer certain materials in that curriculum based on the Free Speech Clause. *Walls*, 144 F.4th at 1003. While *Walls* did not address a challenge to clubs, it clarified that "the right to receive information cannot constrain the government's ability to decide what to say and what not to say." *Id.*

## III. PLAINTIFFS ARE NOT ENTITLED TO A FACIAL INJUNCTION.

As described above and in the State's Opening Brief, Plaintiffs are unlikely to prevail on the merits, which is reason enough to deny them a preliminary injunction. Further, nothing in Plaintiffs' brief demonstrates that the other preliminary-injunction factors tilt in their favor. But perhaps most important, nothing in Plaintiffs' brief shows that they are among the very narrow class of complainants who could even conceivably be entitled to a universal injunction of the sort the district court ordered.

### A. Plaintiffs are not entitled to a universal injunction.

As the State pointed out in its opening brief, "the Supreme Court recently clarified that universal injunctions 'likely exceed the equitable authority that Congress has granted to federal courts.'" Opening Br. at 49 (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025)). As Plaintiffs concede, *CASA* "held that the proper scope of injunctive relief is that

14

which is 'necessary to provide complete relief to each plaintiff with standing to sue.'" Appellees' Br. at 44 (citing *CASA*, 606 U.S. at 852). The district court's order is just such a universal injunction, extending beyond what is necessary to address Plaintiffs' alleged harms and preventing the State from enforcing its law not just against named parties or in named school districts, but in toto throughout its borders. That alone is reason to reverse it.

Plaintiffs attempt to excuse the injunction's impermissible overbreadth with the bare assertion that statewide relief is necessary because a more limited injunction "would impracticably require educational officials to alter a school's offerings *only* as to the named plaintiffs." Appellees' Br. at 44. That is true—the injunction Plaintiffs seek will be limited to giving only Plaintiffs relief. That is a feature, not a bug, of federal courts' equitable authority.

And the problem is not that a school district subject to the injunction might have to adopt a different curriculum or policy that will affect other students of that district beyond a named plaintiff. It is that the State is barred from enforcing the law against non-party licensees who work for non-party school districts attended by non-party students.

The district court's injunction goes far beyond incidentally effecting non-parties related to a party to the suit; it directly bars the State's ability to apply the law to strangers to the suit.

An injunction barring the government from applying the law to non-party strangers to the case was the exact problem the Supreme Court faced in *CASA*. 606 U.S. at 839. The injunction was improper in *CASA* because it went further than was necessary to afford relief to the named plaintiff in the case. There, an injunction in favor of "the child of an individual pregnant plaintiff [gave] that plaintiff complete relief: Her child will not be denied citizenship. Extending the injunction to cover all other similarly situated individuals would not render *her* relief any more complete." *Id.* at 852–53. The same is true here: An injunction prohibiting the State from applying its laws to persons other than Plaintiffs does nothing to afford additional relief to Plaintiffs. The universal injunction is improper and should be vacated.

## B. The preliminary-injunction factors weigh against Plaintiffs.

The injunction is not improper only because it applies beyond Plaintiffs; it is improper as to Plaintiffs themselves because the

16

governing factors do not warrant the district court's second grant of preliminary relief.

**No irreparable harm.** For most of the same reasons that the district court erred in determining that the Instruction Section covered non-instructional matters, Plaintiffs have not suffered an irreparable harm. As described above and in the State's Opening Brief, the Instruction Section covers only compulsory instruction. Whatever effects Plaintiffs allege because of their participation (or curtailed participation) in clubs is not the result of the statute—and harm not caused by the statute cannot be irreparable harm caused by the statute.

And the harms purportedly caused by the Notice Section are not irreparable. Educator Plaintiffs claim that they face discipline and perhaps loss of their licenses and livelihoods if they are found to have violated the Notice Section—but those injuries could be remedied with money damages for back pay and lost wages. That is, if a later court finds a law requiring schools to keep parents informed about their students violates the Constitution. On the other hand, courts cannot restore to the State time in which it was prohibited from enforcing its laws.

17

**Public interest and balance of equities:** Plaintiffs misconstrue the meaning of the status quo, the public interest in enforcement of the laws, and balance of equities in favor of consistency and predictability.

First, the status quo that a preliminary injunction is supposed to preserve is the last peaceable status that existed—here, both relevant parts of the law were in effect for three of the last four school semesters. Indeed, the Schools have faced judicially enforced policy whiplash: the laws were in effect from July 1, 2023 until the first injunction issued, and then again from when this Court vacated the first injunction until the district court entered its second injunction.

The benefit of maintaining that status quo was obvious: The State is always injured when it cannot enforce its laws, and the district court's entering another preliminary injunction forced the State, its school districts, district employees, and students to adapt to a new enforcement regime for the fourth time. Continued disruption of the standards under which the law is enforced imposes real burdens, in time and compliance costs, on every entity touched by the law—particularly when the district court makes that disruption universal rather than limiting it to the parties to the case.

18

For the same reason, the equities balance against the district court's latest injunction, which imposes those real, and often difficult-to-calculate, burdens on strangers to the case, non-parties, and the State's enforcement efforts. Balanced against that are speculative injuries, whether financial or psychic, that are susceptible of redress through money damages. The district court's conclusion that the preliminary-injunction factors favor an injunction is error.

## IV. PLAINTIFFS CANNOT MEET THE PRELIMINARY INJUNCTION FACTORS TO THE LIBRARY SECTION SO THEIR PRELIMINARY INJUNCTION REQUEST IS MOOT.

For a district court to enter a disfavored facial injunction enjoining enforcement of a law, all the preliminary injunction factors must be met. *Walls*, 144 F.4th at 1002. Because Plaintiffs seek to enjoin enforcement of a "duly enacted state statute" they must show that "they are 'likely to prevail on the merits.'" *Id.* (citing *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–33 (8th Cir. 2008) (en banc)).

The district court here did not engage in any of the required analysis to justify a second, overlapping, facial injunction against enforcing a law for the second time. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir. 1987) ("No single factor in

19

itself is dispositive; in each case all the factors must be considered."). One of the necessary requirements for a preliminary injunction (as opposed to a permanent injunction) is threat of irreparable harm to plaintiffs. *Rounds*, 530 F.3d at 731; *see Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) ("the threat of irreparable harm requirement [is] a necessity in proving the propriety of injunctive relief at this stage"). There can be no threat of enforcement or imminent risk of irreparable harm when Defendants are enjoined from enforcing a statute.

Plaintiffs fail to distinguish this Court's recent case vacating a second-issued injunction in a case arising from the same district court. Appellee Br. at 41 (citing *Iowa Migrant Movement for Justice v. Bird*, 2025 WL 319926 (8th Cir. Jan. 24, 2025), *vac'd & reh'g granted*, 2025 WL 1140762 (8th Cir. Apr. 15, 2025)). Plaintiffs agree that this Court found a parallel injunction may be mooted—but assert without basis that the parallel injunction must first be affirmed on appeal. *Id.* at 41–42. The legal effect of twin injunctions against the State are the same whether at the district court or Court of Appeals.

The district court made no findings on the legality of this statute in *this* case—and its opinion was issued after the district court had already enjoined enforcement of the challenged statute. This Court can vacate on the failure to articulate any of the required factors, but especially likelihood of success on the merits and lack of irreparable harm. Indeed, this Court already vacated a facial injunction entered against the same challenged law for procedural failures in entering the injunction made by the district court. *GLBT Youth*, 114 F.4th at 671.

## CONCLUSION

For these reasons, this Court should vacate the preliminary injunction.

Appellate Case: 25-2186    Page: 25    Date Filed: 09/29/2025 Entry ID: 5562276

September 26, 2025

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

STEVEN BLANKINSHIP
*Chief Deputy Attorney General*

ERIC WESSAN
*Solicitor General*

/s/ *Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Defendants-Appellants*

22

# CERTIFICATE OF COMPLIANCE

Under Fed. R. App. P. 32(g) and Local R. 25A, I certify the following:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,036 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft Office 365.

3. This brief complies with the electronic filing requirements of Local R. 25A because the text of the electronic brief is identical to the text of the paper copies and because the electronic version of this brief has been scanned for viruses and no viruses were detected.

September 26, 2025

*/s/ Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendants-Appellants*

Appellate Case: 25-2186   Page: 27   Date Filed: 09/29/2025 Entry ID: 5562276

## CERTIFICATE OF SERVICE

I certify that this brief was filed with the Clerk using the appellate CM/ECF system on September 26, 2025. All counsel of record are registered CM/ECF users who will be served by the CM/ECF system.

September 26, 2025

/s/ *Patrick C. Valencia*
PATRICK C. VALENCIA
*Deputy Solicitor General*

*Counsel for Defendants-Appellants*

Appellate Case: 25-2186      Page: 28      Date Filed: 09/29/2025 Entry ID: 5562276