Case No. 25-2186

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE EIGHTH CIRCUIT

IOWA SAFE SCHOOLS, f/k/a GLBT Youth in Iowa Schools Task Force, et al.,

Plaintiffs-Appellees,

v.

KIM REYNOLDS, in her official capacity as
Governor of the State of Iowa, et al.,
Defendants-Appellants, and
MATT DEGNER, in his official capacity as
Iowa City Community School District Superintendent, et al.,

Defendants.

On Appeal from the United States District Court for the Southern District of Iowa,
No. 4:23-cv-474, Honorable Stephen H. Locher, District Judge

## PLAINTIFFS-APPELLEES' PETITION FOR REHEARING *EN BANC*

Thomas D. Story
AMERICAN CIVIL LIBERTIES UNION
OF IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
(515) 243-3988
thomas.story@aclu-ia.org

Nathan Maxwell
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3656 N. Halsted Street
Chicago, IL 60613
(312) 663-4413
nmaxwell@lambdalegal.org

Laura J. Edelstein
JENNER & BLOCK LLP
525 Market Street, 29th Floor San
Francisco, CA 94105
(628) 267-6800
ledelstein@jenner.com

(Additional counsel listed
on signature block)

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

FEDERAL APPELLATE RULE 40(b)(2) STATEMENT ..........................................1

    A.    The panel decision conflicts with the following decisions of the Eighth Circuit and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions. ..............................................................1

    B.    The panel decision conflicts with the following decisions of the United States Supreme Court. ........................................1

    C.    The panel decision conflicts with the following authoritative decisions of the First, Second, and Third Circuit Courts of appeals. .............................................1

    D.    The proceeding involves one or more questions of exceptional importance, as stated below. ................................1

BACKGROUND .............................................................................................2

ARGUMENT ..................................................................................................3

    A.    The panel's decision as to the library restriction improperly extends *Hazelwood* in a way that conflicts with other Eighth Circuit decisions. ..........................................3

    B.    The panel's decision as to the library restriction conflicts with First Amendment decisions of the United States Supreme Court. ......................................................6

    C.    The panel's expansive and novel extension of *Hazelwood* directly conflicts with authoritative decisions from the First, Second, and Third Circuits.. ..............................7

    D.    Rehearing *en banc* would permit this Court to resolve questions of exceptional importance. ..................................10

CONCLUSION ...........................................................................................12

CERTIFICATE OF COMPLIANCE ........................................................15

CERTIFICATE OF SERVICE ..................................................................15

i

Appellate Case: 25-2186    Page: 2    Date Filed: 04/20/2026 Entry ID: 5630903

# TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

*Board of Education, Island Trees Union Free School District No. 26 v. Pico*,
457 U.S. 853 (1982)..................................................................................4, 5

*Boos v. Barry*,
485 U.S. 312 (1988)..................................................................................12

*Child Evangelism Fellowship of New Jersey, Inc. v. Stafford*,
386 F.3d 514 (3d Cir. 2004) ............................................................. 1, 7, 8, 9

*Chiles v. Salazar*,
607 U.S. ___, 146 S.Ct. 1010 (2026)........................................................1, 6

*GLBT Youth in Iowa Schools Task Force v. Reynolds*,
114 F.4th 660 (8th Cir. 2024) ............................................................. 1, 4, 5

*Hazelwood Sch. Dist. v. Kuhlmeier*,
484 U.S. 260 (1988) ....................................................................... 1, 3, 10

*Iowa Migrant Movement for Justice v. Bird*,
157 F.4th 904 (8th Cir. 2025)....................................................................11

*Metropolitan Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*,
991 F.3d 880 (8th Cir. 2021)......................................................................11

*Miller v. California*,
413 U.S. 15 (1973)..................................................................................1, 7

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
83 F.4th 658 (8th Cir. 2023).......................................................................12

*Penguin Random House, LLC v. Robbins*,
774 F.Supp.3d 1001 (S.D. Iowa, 2025)..........................................................2

*Pleasant Grove City, Utah v. Summum*,
555 U.S. 460 (2009)...................................................................................4

Appellate Case: 25-2186     Page: 3     Date Filed: 04/20/2026 Entry ID: 5630903

*Rosenberger v. Rector and Visitors of Univ. of Va.*,
515 U.S. 819 (1995)...................................................................................... 1, 6, 9

*Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*,
42 F.3d 719 (2d Cir. 1994) ................................................................. 1, 10

*United Food and Comm. Workers Int'l Union v. IBP, Inc.*,
857 F.2d 422 (8th Cir. 1988) ......................................................... 11-12

*Walls v. Sanders*,
144 F.4th 995 (8th Cir. 2025)................................................. 1, 3, 4, 5

*Ward v. Hickey*,
996 F.2d 448 (1st Cir.1993) ................................................... 1, 10

**Statutes**

Iowa Code § 279.80(2)................................................................10

iii

Appellate Case: 25-2186     Page: 4     Date Filed: 04/20/2026 Entry ID: 5630903

**FEDERAL APPELLATE RULE 40(b)(2) STATEMENT**

**A.    The panel decision conflicts with the following decisions of the Eighth Circuit and the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions.**

*Walls v. Sanders*, 144 F.4th 995 (8th Cir. 2025)

*GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024)

**B.    The panel decision conflicts with the following decisions of the United States Supreme Court.**

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)

*Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995)

*Chiles v. Salazar*, 607 U.S. ___, 146 S.Ct. 1010 (2026)

*Miller v. California*, 413 U.S. 15 (1973)

**C.    The panel decision conflicts with the following authoritative decisions of the First, Second, and Third Circuit Courts of appeals.**

*Child Evangelism Fellowship of New Jersey, Inc. v. Stafford*, 386 F.3d 514 (3d Cir. 2004)

*Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719 (2d Cir. 1994)

*Ward v. Hickey*, 996 F.2d 448 (1st Cir.1993)

**D.    The proceeding involves one or more questions of exceptional importance, as stated below.**

1.    Does the panel's order create a dangerous alteration of the relationship between curricular activities, student free speech rights, and school libraries that conflicts with extensive analytical precedent?

2.    Does the panel's unwarranted deference to the State sharply depart from other opinions of this Court concerning whether to accept the State's proffered interpretation of statutory language under the guise of constitutional avoidance?

3.    Collectively, does the panel's treatment of the three provisions challenged create a dangerous precedent of state control over local decisions and personal speech?

1

# BACKGROUND

Plaintiffs-Appellees seek rehearing *en banc* of this Court's panel decision dated April 6, 2026, vacating the district court's grant of a preliminary injunction and remanding the case to the district court to resolve the case on its merits. See Apr. 6, 2026 Order at 3, 10. The panel addressed the district court's ruling concerning three provisions of Iowa Senate File 496 ("SF 496").

The first is a state restriction on school libraries that has forced the removal of hundreds of books contrary to the First Amendment. The district court found that the State, without any attempt to evaluate a book's literary, political, artistic, or scientific value, required school districts to remove hundreds of books that have tremendous pedagogical value—contrary to well established First Amendment jurisprudence.[1]

The second is a provision that prohibits all Iowa schools from providing any "program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender theory or sexual orientation" to students in grades kindergarten through sixth. To avoid overbreadth and vagueness concerns, the district court applied statutory construction rules to narrow most of the terms' application to mandatory school curriculum over which the State had greater control but could not save the terms "program" and "promotion" because they are too broad to refer only to mandatory classroom curriculum.

The third is a provision that requires certain school employees, under penalty

---

[1] The district court's order incorporated its reasoning from *Penguin Random House, LLC v. Robbins*, a separate, coordinated case that proceeded on similar challenges to the library restriction. 774 F.Supp.3d 1001 (S.D. Iowa, 2025). Similarly, on appeal, *Penguin Random House* proceeded in a coordinated fashion with Plaintiff-Appellees here under its separate Appeal No. 25-1819. The same panel delivered the library restriction decision there, which is also applied to this appeal.

Appellate Case: 25-2186    Page: 6    Date Filed: 04/20/2026 Entry ID: 5630903

of discipline, to report any student who requests "an accommodation that is intended to affirm the student's general identity" so that the student's parents can be notified. Guided by recent Eighth Circuit precedent, the district court concluded that the undefined term "accommodation" was likely unconstitutionally vague.

On appeal, the panel misapplied this Circuit's decision in *Walls v. Sanders*, 144 F.4th 995 (8th Cir. 2025), and invented a novel extension of *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988), to hold that the law's restrictions on books in school libraries address school-sponsored speech and are reasonably related to legitimate pedagogical concerns and thus do not run afoul of the First Amendment. As to the district court's construction of the language in the instruction provision and the parental notification provision, the panel's decision reached conclusions regarding the meaning of the statute that are at stark odds with how the law was actually implemented and interpreted by schools, as shown in the record.

The primary and most egregious error warranting *en banc* review is the panel's novel extension of *Hazelwood*, although the panel erred as to all three provisions as shown below.

## ARGUMENT

**A. The panel's decision as to the library restriction improperly extends *Hazelwood* in a way that conflicts with other Eighth Circuit decisions.**

The panel's reliance on *Walls* was misplaced and is in conflict. The *Walls* Court, in fact, affirmed both a private speaker's right to disseminate information and the reciprocal right of others to receive that information free of government interference. The Court likewise reaffirmed that these First Amendment protections apply in schools. *Walls* 144 F.4th at 1002. The operative distinction that led to the holding in *Walls* is that these protections do not apply to classroom instruction

3

because *curricular speech* was conceded to be *government speech*. *Id.* The *Walls* Court recognized the persuasive value of the principal plurality opinion in *Board of Education, Island Trees Union Free School District No. 26 v. Pico*, 457 U.S. 853 (1982) ("*Pico*"), which held students had a right to receive books previously added to a school library. *See Walls*, 144 F.4th at 1004. The Court pointed out the distinction between a school library and the classroom and its matters of curriculum, emphasizing distinction: "Here, we deal not with books in a library, but instead with in-classroom instruction and material in high school." *Id.*

The panel in this appeal expressly acknowledged that the placement and removal of school library books likely would not be viewed as the government speaking. However, the panel then suggested that a school library is properly characterized as part of a school's curriculum and might be viewed as school-sponsored speech by extending *Hazelwood*. Yet, books in the school library bear little resemblance to the kind of speech that prior cases have held to be school-sponsored, as more specifically highlighted with reference to conflicting authoritative precedents from other circuits (*see* Section C, *infra*).

The panel's decision also conflicts with the Eighth Circuit's prior panel decision in *GLBT Youth in Iowa Schools Task Force v. Reynolds*, 114 F.4th 660 (8th Cir. 2024) ("*GLBT Youth I*"). Notably, *GLBT Youth I* found students had standing to challenge the library restriction by rejecting the State's framing of school libraries as constituting government-endorsed private speech. The prior panel in *GLBT Youth I* ruled that reliance on *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009), was unavailing as public school libraries do not share the characteristics of monuments in a park. Government monuments historically have been meant to

4

convey and have the effect of conveying a *government* message. In contrast, historically the government of Iowa has not asserted extensive control over removing books from public school libraries. *GLBT Youth I*, at 668. The panel here disregarded the conflict with *GLBT Youth I*'s holding that the government-sponsored speech doctrine is not applicable to school libraries.

The panel's attempt to recast the library restriction as reasonably related to legitimate pedagogical concerns and thus related to mandatory curriculum is factually flawed. But even that fiction is not sufficient to save the library restriction. The *Walls* Court highlighted the *Pico* dissenting opinions. *Walls*, 144 F4th at 1004. Those opinions uniformly held that "the *school board* can set the curriculum, select teachers, and determine initially what books to purchase for the school library," and "decide which books to discontinue or remove from the school library so long as it does not also interfere with the right of students to read the material and to discuss it." *Pico*, 457 U.S. 921 (O'Connor, J. dissenting) (emphasis added). Indeed, justices on all sides of *Pico* noted that statutes, history, and precedent had vested *local school boards* with a broad discretion to formulate educational policy. Justice Rehnquist noted at length that the First Amendment can apply differently to the role of government as an educator, as compared with the role of the government as sovereign. *Pico*, 457 U.S. 909-10 (Rehnquist, J. dissenting).

Even under the panel's "legitimate pedagogical concerns" theory, the library restriction fails. Educators and local school boards best suited to make these decisions already had deemed the hundreds of books that were *removed* from the libraries to be age appropriate and have educational value. In passing SF 496, the Iowa legislature was acting as sovereign, not as educator.

Appellate Case: 25-2186     Page: 9     Date Filed: 04/20/2026 Entry ID: 5630903

**B.** **The panel's decision as to the library restriction conflicts with First Amendment decisions of the United States Supreme Court.**

The Supreme Court's precedent establishes that school- or government-sponsored speech occurs when a public school or other government entity aims "to convey its own message." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995). By contrast, when a school or other government body facilitates the expression of "a diversity of views from private speakers," the resulting expression is private. *Id.* at 834. The panel's decision is in conflict with this clear precedent.

The panel's decision is further in conflict with the Supreme Court's recent decision in *Chiles v. Salazar*, 607 U.S. ___, 146 S.Ct. 1010 (2026), in which it held that a state law that restricted a licensed therapist from "speak[ing] with interested clients about steps they might take to change unwanted behaviors, expressions, or attractions related to sexual orientation or gender identity" engaged in viewpoint discrimination. *Chiles*, 146 S.Ct. at 1026 (emphasis added). In doing so, the Court reaffirmed that "the First Amendment stands as a shield against any effort to enforce orthodoxy in thought or speech in this country." *Id.* at 1029. As such, "any law that suppresses speech based on viewpoint represents an 'egregious' assault on … [these] commitments." *Id.* (quoting *Rosenberger*, 515 U.S. at 829). This is precisely what the library restriction is intended to do. The local school boards determined that a wide variety of books are appropriate for interested students. The State may not override those decisions and enforce blanket bans on books whose messages the State disfavors.

Finally, the nature of the restriction fails against the Supreme Court's well-established First Amendment principles that require evaluating a book's literary,

6

political, artistic, or scientific value before requiring its removal from a school library. *Cf. Miller v. California*, 413 U.S. 15, 23–24 (1973) ("State statutes designed to regulate obscene materials must be carefully limited."). The *Miller* court concluded that works depicting or describing sexual conduct are the only permissible targets of governmental restrictions on obscene expression, but it also said that those restrictions, "must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Id.* at 24.[2] State laws that seek to regulate obscene material are constitutionally acceptable *only* when they ask "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Id*. (citations omitted). All three elements must be satisfied. In this case, not one of them is.

**C.    The panel's expansive and novel extension of *Hazelwood* directly conflicts with authoritative decisions from the First, Second, and Third Circuits.**

The panel's opinion directly conflicts with the Third Circuit's authoritative decision in *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford*, 386 F.3d 514 (3d Cir. 2004), authored by then-Judge Samuel Alito. There, a school district

---

[2] The *Miller* obscenity standard accounts for the age of the reader. Even for non-obscene books, local educators have always had the discretion to consider factors such as pervasive vulgarity and educational suitability when determining which books should be on school-library shelves.

Appellate Case: 25-2186     Page: 11     Date Filed: 04/20/2026 Entry ID: 5630903

maintained a policy that allowed community groups to distribute qualifying materials to students through faculty. The Court summarized the operative facts in *Hazelwood* best:

> A high school newspaper was held to represent school-sponsored speech where: the paper was the official school newspaper; it was printed with school funds and produced by students in a journalism class that was part of the school curriculum; the students' work was reviewed and graded by the teacher; a faculty member closely supervised all aspects of the paper, including the selection of the editors, the number of pages in each edition, the assignment of stories, and the editing of everything that appeared in the paper, including letters to editor; and the entire paper was reviewed by the principal before publication. *See Hazelwood*, 484 U.S. at 262, 268–69.[3]

*Id.* at 525. The diverse books of hundreds of private authors and publishers in Iowa school libraries do not mirror the student newspaper of *Hazelwood*.

The materials had to meet five requirements in order to be distributed, including that "'[m]aterial being sent home with pupils should relate to school matters or pupil-related community activities' and that '[a]ll activities must be *directly* associated with the children who are enrolled in the Stafford Township School District.'" *Id.* at 520. An evangelical Christian organization sought to use school facilities and distribute their materials that encouraged students to attend Bible-oriented group meetings and live in accordance with biblical teaching. *Id*. at 522. The district ultimately allowed the group to use school facilities to hold after-

---

[3] Notably, the factors listed in *Stafford*, included actual funding in the production of the newspaper and content review before publication. Books purchased for school libraries do not involve advance editorial review by school boards. Nor does the school fund the publication project but merely purchases the product in the stream of commerce along with thousands of other consumers after the product is made generally available.

Appellate Case: 25-2186   Page: 12   Date Filed: 04/20/2026 Entry ID: 5630903

school meetings but denied the request to pass out materials to students, citing concerns of violating the Establishment Clause. *Id.*

Similar to the instant case, the school district argued on appeal that the materials in question represented school-sponsored speech because they were being distributed by the school to the students, and the district was therefore allowed to control or restrict the content of that speech under *Hazelwood* so long as the regulation served a legitimate pedagogical purpose. *Id.* at 524. The Third Circuit dispensed with this argument, saying it "falls very far from the mark." *Id.*

The Third Circuit correctly noted that school-sponsored speech only occurs when a public school or other government entity aims "to convey its own message," whereas when a school "facilitates the expression of 'a diversity of views from private speakers,' the resulting expression is private." *Id.* (quoting *Rosenberger*, 515 U.S. at 833–34). Because the material-distribution policy was not an attempt by the school district to convey any particular message but was instead meant to facilitate expression of a diversity of views from private speakers, the "school-sponsored speech" test under *Hazelwood* was inapplicable.

Also, the panel's "legitimate pedagogical concerns" supporting the library restriction conflicts with authoritative decisions from the First and Second Circuits. As noted above, educators and local school boards best suited to make these decisions already had deemed the hundreds of books that were *removed* from the libraries to be age appropriate and have educational value. In passing SF 496, the Iowa legislature was acting as sovereign, not as educator. A statewide mandate that treats material inappropriate for a kindergartener as per se inappropriate for a high school senior with no consideration for maturity, educational purpose, or the context

9

or manner of presentation cannot reasonably be related to a legitimate pedagogical concern. *See Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 722–23 (2d Cir. 1994) ("Whether a school official's action is reasonably related to a legitimate pedagogical concern 'will depend on, among other things, the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation.'") (quoting *Ward v. Hickey,* 996 F.2d 448, 453 (1st Cir.1993); and citing *Hazelwood,* 484 U.S. at 271, 274). In removing books, the school boards were not making pedagogical decisions; they were complying with Iowa's viewpoint-based censorship.

**D.      Rehearing *en banc* would permit this Court to resolve questions of exceptional importance.**

The three provisions of the law in question threaten to create dramatic and widespread harm to Iowa youth, and the panel's order creates a dangerous alteration of the relationship between curricular activities, student free speech rights, and school libraries that conflicts with extensive analytical precedent. This is especially apparent when the panel's opinions are considered together.

The instruction section prohibits all Iowa schools from providing any "program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender theory or sexual orientation" to students in grades kindergarten through sixth. Iowa Code § 279.80(2). The record includes considerable and unrebutted evidence that school districts implementing the prohibition on "programs" or "promotions" had imposed significant restrictions on student-led extracurricular groups called gender-sexuality alliances, or GSAs, including outright banning them. App. 56, R.Doc. 115-7, ¶¶ 24–26; App. 93, R.Doc. 115-11, ¶ 32; App. 98, R.Doc. 115-12, ¶ 11; App. 115-18, R.Doc. 115-13, ¶¶ 24–30; App. 126–28, 135, R.Doc. 115-

10

14, ¶¶ 17–18, 21, 38; App. 140-41, R.Doc. 115-15, ¶¶ 8, 12; App. 149-50, R.Doc. 115-16, ¶ 9. After considering this evidence and conducting a lengthy analysis of the Iowa canons of statutory interpretation that the prior panel recommended, the district court concluded the prohibition on "programs" and "promotions," on its face, stretched unconstitutionally into extracurricular spaces. App. 541–48, R.Doc. 141 at 15–22. The panel, however, determined the canon of constitutional avoidance permitted it to adopt the State's atextual, and factually inaccurate, interpretation of these words as being limited to "classroom curriculum." Given the panel's other conclusions as to the scope and role of "curriculum" in the traditionally non-curricular context of school libraries, the panel's opinions invest "curriculum" with a malleability the State may use to exert control over traditionally non-curricular spaces.

This unwarranted deference to the State sharply departs from other opinions of this Court concerning whether to accept the State's proffered interpretation of statutory language under the guise of constitutional avoidance. *See, e.g., Iowa Migrant Movement for Justice v. Bird*, 157 F.4th 904, 914–15, 921, 926 (8th Cir. 2025) (rejecting Iowa Attorney General's interpretation of certain provisions of state immigration statute on constitutional avoidance grounds, noting Court cannot "ignore the plain meaning"). This Court's well-established rule is to respect a state *court's* interpretation of a state law, or, if unavailable, to use the state court's rules of construction. *Metropolitan Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021). It is not to defer to the State's interpretation or adopt a narrowing construction when one is not "reasonable and readily apparent." *United*

11

*Food and Comm. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 431 (8th Cir. 1988) (quoting *Boos v. Barry*, 485 U.S. 312, 330 (1988)).

The panel's deference to the State continued in its analysis of the parent or guardian notification provision. The panel summarily concluded the statutory language, an "accommodation intended to affirm gender identity," is easily understood. This is inconsistent with this Court's recent precedent, *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 669 (8th Cir. 2023), in which it recognized gender identity is a "capacious concept that likely goes well beyond a name and a pronoun." Besides requests to use pronouns different from the student's gender reported in school registration records, the notification provision offers no clarity to educators in what might reasonably be construed an "accommodation" that requires a report. App. 91–92, R.Doc. 115-11, ¶¶ 24–27; App. 99-100, R.Doc. 115-12, ¶¶ 15–19. What exactly it means to "accommodate" a student's gender identity, much like what it means to "respect" it, especially where those terms are undefined, is unclear. That "leaves the policy open to unpredictable interpretations and creates a substantial risk that school administrators [or state officials] may arbitrarily enforce the policy." *Parents Defending Education*, 83 F.4th at 669.

Collectively, the panel's treatment of the three provisions challenged would create a dangerous precedent of state control over local decisions and personal speech.

## CONCLUSION

The transient nature of library collections and the diversity of viewpoints they contain make them incompatible with the government-endorsed speech doctrine's assumption of a unified governmental message. School libraries constitute forums

Appellate Case: 25-2186     Page: 16     Date Filed: 04/20/2026 Entry ID: 5630903

for student inquiry rather than government speech platforms. School libraries are distinguished by their educational mission, diverse viewpoints, limited government control, and the public's perception that books represent authors' rather than government's messages. The panel's decision endangers that distinction, exacerbated by the panel's further deference to the State on what school offerings may be interpreted as "curricular," while granting it further allowance on permissible uncertainty in words and phrases carrying disciplinary threat.

For the foregoing reasons, Plaintiffs-Appellees respectfully request that the Court grant rehearing *en banc*.

Dated April 20, 2026.

Respectfully submitted,

/s/ Nathan Maxwell
Nathan Maxwell
Camilla B. Taylor
Kenneth D. Upton, Jr.
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3656 N. Halsted
Chicago, IL 60613
(312) 663-4413
nmaxwell@lambdalegal.org
ctaylor@lambdalegal.org
kupton@lambdalegal.org


Thomas D. Story, AT0013130
Shefali Aurora, AT0012874
Rita Bettis Austen, AT0011558
AMERICAN CIVIL LIBERTIES
UNION   OF IOWA FOUNDATION
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
(515) 243-3988
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org
rita.bettis@aclu-ia.org

13

Karen L. Loewy
Sasha J. Buchert
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th Street, N.W., Suite 4140
Washington, DC 20006
(202) 804-6245
kloewy@lambdalegal.org
sbuchert@lambdalegal.org

Laura J. Edelstein
Katherine E. Mather
JENNER & BLOCK LLP
525 Market Street, 29th Floor
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com
KMather@jenner.com

Joshua J. Armstrong
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
JArmstrong@jenner.com

Christopher J. Blythe
Connor S.W. Rubin
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
CBlythe@jenner.com
Connor.Rubin@jenner.com

Karen Lou
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
(212) 891-1600
KLou@jenner.com

14

Appellate Case: 25-2186    Page: 18    Date Filed: 04/20/2026 Entry ID: 5630903

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3552 words

2. This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word for Microsoft Office 365.

3. Pursuant to Eighth Circuit Local Rule 28A(h), undersigned counsel hereby certifies that the brief has been scanned for viruses and that the brief is virus-free.

/s/ Nathan Maxwell
Nathan Maxwell


# CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Nathan Maxwell
Nathan Maxwell

Appellate Case: 25-2186    Page: 19    Date Filed: 04/20/2026 Entry ID: 5630903